**SPECTRUM LEASING CORPORATION, Appellant,**

v.

**UNITED STATES of America, et al.**

**No. 84–5371.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 15, 1985.

Decided June 18, 1985.

G. Lindsay Simmons, Washington, D.C., with whom Gerard F. Doyle, Washington, D.C., was on brief, for appellant.

A. Patricia Frohman, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on brief, for appellees.

Before TAMM and BORK, Circuit Judges, and McGOWAN, Senior Circuit Judge.

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge.

Spectrum Leasing Corporation ("Spectrum") appeals from an order of the United States District Court dismissing its case for lack of subject matter jurisdiction. Spectrum argues that section 702 of the Administrative Procedure Act, 5 U.S.C. § 702 (1982), and 28 U.S.C. § 1331 (1982), the general federal question statute, confer subject matter jurisdiction on the district court to review the government's alleged failure to comply with the Debt Collection Act of 1982, 31 U.S.C. §§ 3701 *et seq.* (the "DCA" or the "Act"). United States District Court Judge John G. Penn held that the court lacked jurisdiction because the dispute is governed by the Contract Disputes Act of 1978, 41 U.S.C. § 602(a)(2) (1982), and is in excess of the $10,000 jurisdictional limit imposed upon district courts by the Tucker Act, 28 U.S.C. § 1346 (1982). For the reasons given below, we affirm the district court.

## I. BACKGROUND

Spectrum provides data processing equipment and related software and services. On April 15, 1982, the General Services Administration ("GSA") awarded a contract to Spectrum for the development of a data communications network to be used by the Veterans' Administration. Delivery of the hardware systems commenced in September 1982, and in November GSA began to make the contract-specified lease payments. Spectrum encountered a number of difficulties in developing and providing an acceptable software package in accordance with the contract requirement, however, and the government eventually invoked the contract's liquidated damages clause. As a result, from June 1, 1983 to December 27, 1983, the government collected the assessed liquidated damages by returning Spectrum's hardware invoices unpaid.

On December 9, 1983, Spectrum sued in the district court, claiming that by withholding payments on the hardware invoices, GSA violated the procedures set forth in the DCA.[1] It sought an order declaring that the government had violated Spectrum's rights under the DCA and an injunction compelling the GSA to cease withholding hardware and maintenance payments due under the contract. The withheld payments totalled approximately $1,800,000. The district court dismissed the action for want of subject matter jurisdiction and Spectrum appeals.

## II. DISCUSSION

Spectrum argues that the Administrative Procedure Act, 5 U.S.C. § 702, paired with the general federal question statute, 28 U.S.C. § 1331, confer the necessary waiver of sovereign immunity and grant of subject matter jurisdiction to the district court. The APA provides that "[a]n action in a court of the United States seeking relief other that [sic] money damages and stating a claim that an agency ... acted or failed to act in an official capacity or under color of legal authority shall not be dismissed or relief therein be denied on the ground that it is against the United States." Once the obstacle of sovereign immunity has been surmounted under 5 U.S.C. § 702, section 1331 confers subject matter jurisdiction on the district court to determine claims arising under acts of Congress. Spectrum asserts that the district court has jurisdiction to hear its claim because the GSA's collection of liquidated damages by means of administrative offset violated the requirements of the DCA.

Spectrum's arguments, however, do not properly consider the limitations of section 702. Congress restricted section 702's waiver of sovereign immunity by stating that nothing in the APA "confers authority

---

1. The DCA provides a set of procedures and safeguards designed to assure due process protections to delinquent government debtors and to enhance the ability of the federal government to collect its debts. Whether the DCA applies to the collection of liquidated damages by withholding payments owed under a government procurement contract is a question of the first impression and one which we have no occasion to address.

to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702 (1982). The Tucker Act, 28 U.S.C. §§ 1346, 1491, operates as such a limitation of section 702 in cases based on contracts with the federal government. Section 1491 of the Tucker Act vests jurisdiction in the United States Claims Court to hear monetary claims against the United States founded either upon a contract or upon a provision of "the Constitution, or any Act of Congress, or any regulation of an executive department," 28 U.S.C. § 1491, that "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *United States v. Mitchell,* 463 U.S. 206, 103 S.Ct. 2961, 2968, 77 L.Ed.2d 580 (1983). Section 1346(a)(2), the "Little" Tucker Act, vests concurrent jurisdiction in the district courts for claims not exceeding $10,000. It is clear from the APA's legislative history that section 702's waiver of sovereign immunity may not be used to circumvent the jurisdictional and remedial limitations of the Tucker Act.[2]

As both parties acknowledge, resolution of this dispute thus turns upon whether Spectrum's claim is a contract dispute subject to the jurisdiction of the Claims Court under the Tucker Act, or a request for review of agency action under the APA and section 1331.[3] Whether a claim is one "founded upon" a contract for purposes of the Tucker Act "depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis,* 672 F.2d 959, 968 (D.C.Cir.1982). A court will not find that a particular claim is one contractually based merely because resolution of that claim requires *some* reference to a contract.

In *Megapulse,* the plaintiff sought an order enjoining the United States Coast Guard from violating the Trade Secrets Act, 18 U.S.C. § 1905, by releasing technical data in which Megapulse claimed proprietary rights. The government acquired the data through a series of agreements with Megapulse for the demonstration and development of navigation transmitters. Megapulse argued that the district court had subject matter jurisdiction based upon the APA and section 1331. Analysis of the source of the rights and type of relief sought revealed that Megapulse's claim was not a contract action. Jurisdiction was therefore proper in the district court under the APA and section 1331 because the claim did not fall within the Tucker Act.

---

**2.** The legislative history reveals that Congress intended the remedies available under the Tucker Act to be exclusive in cases against the United States based on contracts. The House Report states that in 28 U.S.C. § 1491

> Congress created a damage remedy for contract claims with jurisdiction limited to the Court of Claims except in suits for less than $10,000. The measure is intended to foreclose specific performance of government contracts. In terms of the proviso, a statute granting consent to suit, *i.e.,* the Tucker Act, "impliedly forbids" relief other than the remedy provided by the Act.

H.R.Rep. No. 1656, 94th Cong., 2d Sess. 12–13 (1976), U.S.Code Cong. & Admin.News 1976, pp. 6121, 6133.

**3.** The district court also found that, because the claim is one founded upon a contract, it is governed by the Contract Disputes Act and is therefore outside section 1346's grant of jurisdiction to the district court. The Contract Disputes Act, 41 U.S.C. §§ 601 *et seq.* (1982) (the "CDA"), amended the Tucker Act in two respects. First, it conferred exclusive jurisdiction on the Claims Court to hear contract cases arising under section 10(a)(1) of the CDA. Second, it deprives the district courts of jurisdiction over contract claims arising under sections 10(a)(1) and 8(g)(1). Section 1346 thus provides that the district courts shall *not* have jurisdiction over any claim against the United States, even if not in excess of $10,000, if the claim is one

> founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978.

We do not decide whether the Contract Disputes Act would apply to this case, however, since the amount in controversy here exceeded $10,000. Because jurisdiction would therefore have been improper under section 1346 in the first instance, the Contract Disputes Act exception could not have been triggered.

Spectrum apparently contends that the source of its right to relief in this case is the Debt Collection Act and not the contract.[4] We disagree. Spectrum seeks an injunction requiring the government to pay monies owed for computer hardware. The right to these payments is created in the first instance by the contract, not by the Debt Collection Act. The DCA, even if it applied, confers no such right in the absence of the contract itself.[5] Although the DCA might impose procedural requirements on the government having some impact on the contract, the Act in no way creates the substantive right to the remedy Spectrum seeks.

In *Megapulse*, by contrast, the plaintiff's proprietary rights in the technical data existed prior to and apart from rights created under the contract. As the court noted, the *government*, not Megapulse, relied on the contract by arguing that the government acquired the data under the contract and could therefore freely disseminate the information for commercial use. *Id.* at 969. Here, Spectrum's right to the hardware payments arose only upon creation and satisfaction of its contract with the government; in no sense did it exist independently of that contract.

In determining whether Spectrum's claim is a contract dispute, we find the type of relief sought equally revealing. Spectrum's complaint requested an order "[d]eclaring that [it] is entitled to immediate payment of all hardware and maintenance payments illegally withheld ... by means of administrative set-off." Spectrum's Complaint for Declaratory and Injunctive Relief, Joint Appendix at 11. Unlike *Megapulse*, in which the plaintiff sought an order enjoining the dissemination of information in which it had an extra-contractual proprietary interest, Spectrum seeks an order compelling the government to pay money owed in exchange for goods procured under an executory contract. In other words, Spectrum seeks the classic contractual remedy of specific performance. In terms of the relief sought, Spectrum's ac-

---

4. Spectrum relies entirely on *National Helium Corp. v. Morton,* 455 F.2d 650 (10th Cir.1971), in support of its argument that its claim is founded on the government's failure to comply with a specific congressional act rather than a contract. In *National Helium,* the Tenth Circuit ordered the Secretary of the Interior to comply with the requirements of the National Environmental Policy Act ("NEPA") prior to cancelling a helium conservation contract. The court's holding resulted in the reinstatement of the helium contract and obligated the government to perform under it. The Tenth Circuit found, however, that the plaintiffs in that case were not asserting a private right in their capacity as government contractors, but were instead acting as private attorneys general enforcing the requirements of NEPA. As such, they exercised the same rights as would a third party environmental group; the fact that they were also government contractors was irrelevant. No such distinction is applicable here. *See also National Helium Corp. v. Morton,* 486 F.2d 995 (10th Cir.1973).

5. Spectrum's characterization of its case as one arising under the DCA in some respects resembles the plaintiff's jurisdictional theory in *S.J. Groves & Sons Co. v. United States,* 495 F.Supp. 201 (D.Col.1980). In *S.J. Groves,* a government contractor argued that the APA and section 1331 conferred jurisdiction on the district court to hear his claim because the dispute arose under the federal law and regulations governing government contracts. The district court rejected the argument, stating that "[t]his fine distinction is insufficient to circumvent the jurisdiction of the appropriate court.... Although this dispute requires interpretation of the federal law and regulations regarding procurement and administration of government contracts, the gravamen of the complaint is one based upon the contract itself." *Id.* at 206–07. Similarly, Spectrum's case may require the interpretation of the DCA, but the gravamen of its complaint is that the government has breached the contract by wrongfully withholding payments due.

Spectrum argues that *S.J. Groves* involved the interpretation of a contract while this case does not. That distinction cannot be determinative. As we have stated, a court will not find that an action is based on a contract simply because some reference to a contract is necessary. *Megapulse,* for example, undoubtedly involved the interpretation of a contract because the government defended the suit by claiming it had a contractual right to. disseminate the technical data. Only an examination of the source of the rights asserted and the type of relief sought can determine when a cause of action is "founded" upon a contract within the meaning of the statute.

tion against the government is equivalent to a seller's action for the price of goods against a private buyer under Article II of the Uniform Commercial Code.[6] American Law Institute, *Uniform Commercial Code* § 2–709 (1972).

Having determined that the contract provides the ultimate source of Spectrum's rights and that the relief sought is a typical contract remedy, we must conclude that Spectrum's claim is one founded upon a contract for purposes of the Tucker Act. As we stated above, Congress intended the jurisdiction and remedies of the Tucker Act to be exclusive in cases based on government contracts,[7] and the APA by its own terms does not confer authority to grant relief where another statute impliedly limits the relief sought. The APA and section 1331 thus cannot confer jurisdiction upon the district court to hear this case, and the claim falls outside the district court's concurrent Tucker Act jurisdiction under section 1346(a)(2) because the amount in controversy exceeds $10,000. Because no statute other than the Tucker Act waives sovereign immunity and confers subject matter jurisdiction to hear this claim, it falls within the Claims Court's exclusive jurisdiction under section 1491 of the Tucker Act.[8] The district court therefore lacked subject matter jurisdiction and properly dismissed this suit.

For the foregoing reasons, the decision of the district court is

*Affirmed.*

---

**6.** The APA, of course, only applies to claims against the United States seeking relief other than money damages. 5 U.S.C. § 702 (1982). Thus, had Spectrum requested damages, the APA would not have applied whether or not the action was based on a contract. This court has recently noted, however, that specific performance, even if it involves the payment of money, is not the equivalent of money damages. *See Maryland Department of Human Resources v. Department of Health and Human Services,* 763 F.2d 1441, 1446 (D.C.Cir.1985) ("while in many instances an award of money is an award of damages, '[o]ccasionally a money award is also a specie remedy' ") (citation omitted).

**7.** The Claims Court or district court exercising Tucker Act jurisdiction ordinarily lacks the authority to grant specific performance of contracts as well as other forms of equitable relief. *See Larionoff v. United States,* 533 F.2d 1167, 1180 (D.C.Cir.1976), *aff'd,* 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977). We note, however, that in limited circumstances the Claims Court when exercising Tucker Act jurisdiction may be empowered to grant such equitable relief where the relief sought is in the form of money. *Id.*

**8.** Because the district court's jurisdiction under section 1346(a)(2) is limited to claims under $10,000, while that of the Claims Court is not, most federal courts have stated that the Claims

Court's jurisdiction over non-tort claims against the government in excess of $10,000 is exclusive. *See, e.g., International Engineering Co., Div. of A–T–O, Inc. v. Richardson,* 512 F.2d 573, 577 (D.C.Cir.1975), *cert. denied,* 423 U.S. 1048, 96 S.Ct. 774, 46 L.Ed.2d 636 (1976); *Graham v. Henegar,* 640 F.2d 732, 734 (5th Cir.1981); *Lee v. Blumenthal,* 588 F.2d 1281 (9th Cir.1979); *Estate of Watson v. Blumenthal,* 586 F.2d 925 (2d Cir.1978).

As we recently noted in *Van Drasek v. Lehman,* 762 F.2d 1065, 1071, n. 10 (D.C.Cir.1985), however, jurisdiction may not be exclusive under the Tucker Act where other statutes independently provide subject matter jurisdiction and a waiver of sovereign immunity. *See, e.g., Munoz v. Small Business Administration,* 644 F.2d 1361 (9th Cir.1981). Unlike statutes which both waive sovereign immunity and designate a particular forum, as in *Munoz,* however, the circuits appear to be split on the question of whether the Tucker Act will limit section 1331 jurisdiction where another statute has been construed as a waiver of sovereign immunity. *Compare, e.g., Graham v. Henegar,* 640 F.2d 732, 734–35 (5th Cir.1981), *with Bor-Son Bldg. Corp. v. Heller,* 572 F.2d 174, 181–82 (8th Cir.1978). In our view, the question turns solely on whether Congress has manifested an intent to provide an alternative forum for adjudication of claims that would otherwise fall under the Tucker Act.