**ASSOCIATED FINANCIAL CORPORATION, et al.,
Plaintiffs,**

v.

**Jack KEMP, Secretary of the Department of Housing and Urban Development, Defendant.**

**Civ. A. No. 89–3201 (JHG).**

United States District Court,
District of Columbia.

July 23, 1991.

Judith Bartnoff, Timothy A. Vanderver, Jr., Ethan S. Burger, Patton, Boggs & Blow, Washington, D.C., for plaintiffs.

Jeffrey T. Sprung, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

JOYCE HENS GREEN, District Judge.

Pending before the Court are plaintiffs' motion for partial summary judgment; defendant's motion for summary judgment; plaintiffs' motion to reopen discovery; and the parties' respective oppositions and replies to those motions. Because, as explained below, the Court lacks jurisdiction over this action, the motions are denied and the case is dismissed.

### I

Plaintiffs Associated Financial Corporation, United–Germano–Millgate Limited Partnership ("the Partnership"), and United Housing Preservation Corporation brought this action to compel defendant ("HUD") to provide funding that it allegedly committed to plaintiffs as a "Flexible Subsidy loan" to go forward with the rehabilitation of low-income housing units known as the Germano–Millgate Apartments.

Briefly stated, the HUD program that is the backdrop of this controversy operates as follows. Under a statute authorizing assistance to troubled multifamily housing projects, 12 U.S.C. § 1715z–1a, HUD administers a "Flexible Subsidy Fund," *see id.* § 1715z–1a(j)(1), to provide "assistance for capital improvements in accordance with this section." *Id.* § 1715z–1a(j)(4). Such assistance includes "any major repair or replacement of a capital item in a multifamily housing project," and is conditioned on the owner of a project who receives such assistance agreeing to contribute to the funding in a specified manner. *Id.* § 1715z–1a(k)(1), (2). The statute further directs that the Secretary of HUD, "[i]n providing, and contracting to provide, assistance for capital improvements," shall give priority to certain projects. *Id.* § 1715z–1a(k)(4). The implementing regulations provide that "assistance is available for capital improvements," *id.* § 219.305(a), and that "[t]he Secretary will provide this assistance *only if* the Secretary deter-

mines" that the project owner meets certain financing and other requirements, *id.* § 219.305(b) (emphasis supplied). The regulations further require that the component funds be administered "by spending 40 percent of its allocation, or its share of the stated dollar amount (whichever is less), to the extent of approvable applications," and the Secretary of HUD "will not use less than $30 million, or 40 percent of the amounts available.... for purposes of providing capital improvement loans.... to the extent of approvable applications." 24 C.F.R. §§ 219.115(d), (e).

The events that led to the instant lawsuit grew out of plaintiffs' application to HUD for a Flexible Subsidy loan. In June 1988, the owner of The Germano–Millgate Apartments, a 1960's housing project in Chicago, submitted to the HUD Chicago area office an application for HUD's consent to the transfer of physical assets ("TPA") to the Partnership, a plaintiff herein. The application outlined rehabilitation and financial plans to address the problems at the project, and noted that the Partnership would later apply for a Flexible Subsidy loan to supply the principal funding for the rehabilitation program. *See* Complaint Exh. B. In August, the Partnership submitted a formal application for the loan. *Id.* Exh. C. A Management Improvement and Operating Plan ("MIO Plan") was also submitted, setting forth plans for the rehabilitation program. *Id.* Exh. I. The plans for funding the program included a $3,000,000 Flexible Subsidy loan, a $500,000 loan from the City of Chicago, and a $1,300,000 owner contribution; it also budgeted $3,700,000 to cover builder fees and other costs, and $1,100,000 to pay past due taxes and other property costs. *Id.*

The Partnership also sought to obtain an allocation of low-income housing tax credits from the State of Illinois to fund the owner contribution. Plaintiffs' Statement of Material Facts, ¶ 6. This tax credit program required evidence of HUD's commitment to fund the Flexible Subsidy loan before the requested tax credit would be allocated. *Id.* ¶ 7. The 1988 tax credits would expire if the rehabilitation of the property were

not complete and the buildings were not in service by December 31, 1990. *See generally* 26 U.S.C. § 42.

On November 10, 1988, Donald A. Kaplan, Director of the Office of Multifamily Housing Management at HUD headquarters (the office that administers the Flexible Subsidy program) wrote a letter to the Partnership, which read, in pertinent part:

> In consideration of the deadlines that exist with respect to your ability to participate in Illinois' tax credit program, this letter should be considered as evidence of HUD's commitment to fund your proposal [for a Flexible Subsidy loan] in the approximate amount of $3,000,000, subject to your timely compliance with all existing handbook requirements and completion of HUD processing.

Complaint Exh. D. It is this letter, and the above-quoted passage therefrom, that forms the core of the instant controversy.

Meanwhile, HUD conditioned approval of the TPA on the Partnership providing a $100,000 irrevocable letter of credit, which the Partnership did on December 2, 1988. Complaint Exh. G. Four days later, a final revision to the MIO plan was submitted to the Chief of Loan Management at the HUD Chicago Area Office. *Id.* Exh. H. On December 29, 1988, the Housing Management Director of the HUD Chicago Area Office granted Preliminary Approval of the Germano–Millgate TPA, which meant that it approved the rehabilitation proposal, found that the proposal would satisfy the needs of the property, and approved the transfer of the property to the Partnership. *Id.* Exh. J.

On January 12, 1989, both a Desk Chief and Branch Officer,[1] after reviewing the rehabilitation proposal and concluding that the Flexible Subsidy application met applicable Flexible Subsidy Handbook requirements, recommended HUD approval of a Flexible Subsidy loan for Germano–Millgate. *Id.* Exh. K. Shortly thereafter, the Partnership paid past due taxes (over $600,000) owed on the property. *Id.* Exhs. L, A.

With no funding of the Flexible Subsidy loan forthcoming, the Senior Vice–President of Multifamily Housing Initiatives of the Federal National Mortgage Association sent a letter on July 27, 1989, to HUD's Acting Deputy Assistant Secretary for Multifamily Housing programs, James Logue, requesting confirmation of HUD's commitment to fund the $3,000,000 Flexible Subsidy loan for Germano–Millgate. On August 9, 1989, Mr. Logue replied by letter stating that "HUD has not committed itself to making the Flexible Subsidy loan. Under new guidelines to be issued soon, all requests for funding will be reconsidered along with any new applications that are submitted." *Id.* Exh. M. After unsuccessful attempts to contact appropriate officials at HUD and unanswered requests that HUD provide the funding, *id.* Exhs. N–P, plaintiffs instituted this action.

Once discovery in this case concluded, plaintiffs moved for partial summary judgment. Plaintiffs argue that in the November 8, 1988 letter from Mr. Kaplan ("Kaplan letter"), HUD made a written commitment to fund a Flexible Subsidy loan for the rehabilitation of Germano–Millgate, and because that commitment was made for the express purpose of inducing reliance by plaintiffs and others, HUD must be compelled to honor that commitment, provide sufficient funding to fulfill the goals of the subject project, and pay plaintiffs' costs and fees in this litigation. Plaintiff asks for judgment on all counts except for the issue of "additional relief, including the amount of attorneys' fees and costs, beyond receipt of $3,000,000 in Flexible Subsidy loan funds to which plaintiffs are entitled."

Defendant responded with a motion for summary judgment, contending that the Kaplan letter was not, in fact, a commitment, and that any reliance plaintiffs placed thereon was unreasonable. HUD

---

[1] The record is not clear, but it appears that these were HUD staff at the Chicago Field Office.

further argued that it was well within its authority to postpone processing of the application pending the development of new regulations.

The parties' positions changed slightly after further documents were provided to plaintiffs by HUD well after the close of discovery. Apparently, these matters had not been earlier produced because of errors on the part of the Assistant United States Attorney and HUD offices. Plaintiffs, claiming bad faith on the part of defendant, have moved to reopen discovery in order to, *inter alia*, depose the HUD officials involved in the processing of their Flexible Subsidy loan application.[2] Defendant opposes the motion on the ground that there is no basis for the admittedly unusual step of deposing governmental officials. In this later papering, defendant also apparently abandoned the argument that it was awaiting new regulations, and instead urges that the case be dismissed because there was no approval or, alternatively, because plaintiffs cannot state a cause of action under the APA.

## II

■ Although the jurisdictional question was raised only after the pending summary judgment motions became ripe for decision, this Court has the duty to consider its jurisdiction in the first instance. Fed. R.Civ.P. 12(h)(3).[3]

■ Plaintiffs allege two jurisdictional bases for their case. They invoke the mandamus statute, 28 U.S.C. § 1861, claiming that they are entitled to a writ of mandamus requiring HUD to honor its commitment to provide the Flexible Subsidy loan. Second, they assert that jurisdiction is appropriate under the Administrative Procedure Act, 5 U.S.C. §§ 702, 704, because HUD's inaction was arbitrary, capricious and an abuse of discretion within the meaning of that statute.[4] Jurisdiction of this case clearly cannot arise from the mandamus statute because the complaint does not state a claim thereunder. To obtain the extraordinary writ of mandamus, plaintiffs would have to show the following: (1) that a public official has a plain duty to perform the act requested; (2) that plaintiffs have a plain right to have the act performed; and (3) that there exist no other adequate remedies by which their right can be vindicated. *Matthews v. United States*, 810 F.2d 109, 113 (6th Cir.1987). Plaintiffs cannot make the required showing. The act requested is not a ministerial one; as is evident from the review of the Flexible Subsidy loan program, *supra*, the granting of these loans is discretionary, not mandatory.[5] Absent a statutory or regulatory mandate, there is no clear ministerial duty in this context. *See District Lodge No. 166, Int'l Ass'n of Machinists & Aerospace Workers AFL–CIO v. TWA Services, Inc.*, 731 F.2d 711, 718 (11th Cir.1984), *cert. denied*, 469 U.S. 1209, 105 S.Ct. 1175, 84 L.Ed.2d 324 (1985). Accordingly, this basis for jurisdiction is nonexistent.

Plaintiffs argue more forcefully that their claim arises under the APA. Section 702 of the APA sets forth the basis for judicial review of agency action:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed on the ground that it is against the United States or that the United States is an indispensable party.

---

2. Plaintiffs have not asked that the discovery be permitted in order to supplement their pending summary judgment motion.

3. This Rule reads: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

4. If review is proper under the APA, this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

5. *See, e.g.,* 24 C.F.R. § 219.100(f) (Secretary determines whether applicant for loan meets satisfactory levels of competency and experience).

5 U.S.C. § 702. Based on the above language, it would appear that the plaintiffs have indeed asserted a cognizable claim against HUD, because they are alleging a "legal wrong" caused by "agency action," they are not seeking money damages,[6] and they are claiming that an agency officer failed to act in an official capacity.

However, there are further provisos in § 702, including the following: "Nothing herein ... confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.* This limitation on jurisdiction proves fatal to this action when read in conjunction with the Tucker Acts.

■ The Tucker Act and Little Tucker Act provide that "the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States." 28 U.S.C. § 1346(a)(2). Instead, "[t]he United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded ... [upon] any Act of Congress or any regulation of an executive department.... [and] upon any express or implied contract with the United States...." *Id.* § 1491.

An examination of the action brought by plaintiffs reveals that it is "founded upon" an alleged contract. Reduced to essentials, their claim consists of the following elements: HUD issued a written undertaking that promised a loan on the fulfillment of certain conditions. Those conditions were met. HUD entered into the transaction knowing and intending that plaintiffs would rely thereon. Plaintiffs reasonably did rely on this commitment to their detriment. At bottom, then, plaintiffs are asking this Court to find that HUD made a contractual commitment and to enforce that commitment.

Plaintiffs vehemently reject this characterization, arguing that

Plaintiffs do not argue here that HUD's commitment was contractual, but rather that HUD's action—including its approval of the transfer of physical assets for Germano–Millgate—indicated that the Germano–Millgate Flexible Subsidy application was approved for funding so long as it met HUD's technical requirements, which it did. HUD's commitment letter by its terms was intended to be evidence of that approval, on which plaintiffs and others, including the State of Illinois and private investors in the project, were expected to rely. Plaintiffs' claim in this case is that it was arbitrary and capricious, and abuse of discretion, and unlawful under the APA for HUD then not to provide the Flexible Subsidy funding, when the application satisfied the program requirement and funds were available.

Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Reopen Discovery, at 15. The fact that plaintiffs characterize their claim as one challenging arbitrary agency action does not automatically resolve the jurisdictional question, however, for it is "hard to conceive of a claim falling no matter how squarely within the Tucker Act which could not be urged to involve as well agency error subject to review under the APA." *International Engineering Co., Division of A–T–O, Inc. v. Richardson,* 512 F.2d 573, 580 (D.C.Cir.1975), *cert. denied,* 423 U.S. 1048, 96 S.Ct. 774, 46 L.Ed.2d 636 (1976) (quotation omitted). As our Circuit noted in *Spectrum Leasing Corp. v. United States,* 764 F.2d 891, 894 n. 5 (D.C.Cir.1985), "[o]nly an examination of the source of the rights asserted and the type of relief sought can determine when a cause of action is 'founded' upon a contract within the meaning of the [Tucker Act] statute." *See also Megapulse, Inc. v. Lewis,* 672 F.2d 959, 968 (D.C.Cir.1982).

It is clear in the instant action that the "source of the rights asserted" by plaintiffs is the November 10, 1988 letter that "committed" HUD to fund the Flexible Subsidy loan. The mandamus and estoppel

---

**6.** Instead, they are seeking specific performance which, although it entails money, is not "money damages" within the terms of the APA and the Tucker Act. *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988).

claims are founded in the letter—on the grounds that the words contained therein created their entitlement.

There is no other source of rights asserted by plaintiffs. Neither the statute nor the regulations require HUD to approve a Flexible Subsidy loan application if it meets certain criteria. Plaintiffs admit that "there is no statutorily set deadline that dictates when HUD must provide the Partnership with the loan funds." Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Partial Summary Judgment at 15. What they fail to acknowledge is that there is no statute or regulation mandating that HUD grant such loans under any circumstances. Plaintiffs argue instead that "HUD's delay in funding its loan commitment runs counter to the purpose of U.S. national housing policy and the objectives of the Flex Program." *Id.* at 15. Even if that were so (a question the Court is not in a position to answer), it does not constitute a violation of the terms of the applicable statute. Neither the HUD statutes, nor the regulations, nor the APA "create[ ] the substantive right to the remedy" plaintiffs seek. *Spectrum Leasing Corp.*, 764 F.2d at 894. Plaintiffs' alleged entitlement to the Flexible Subsidy loan arose only upon creation of the purported "commitment" by HUD; in no sense does it exist independent of that contract. *See id.*

The language employed by plaintiffs in their pleadings confirms that their claim is a contractual one. Their emphasis on the term "commitment," "the promised Flexible Subsidy funding," and their statements that HUD issued the November 10, 1988 letter with the intent to induce reliance, and that plaintiffs detrimentally relied thereon, support the Court's determination. Further, "the type of relief sought is equally revealing," as plaintiffs here seek "the classic contractual remedy of specific performance." *Spectrum Leasing Corp.*, 764 F.2d at 894.

Accordingly, because this case "is concerned solely with rights created within the contractual relationship and has nothing to do with duties arising independently of the contract," *North Side Lumber Co. v. Block*, 753 F.2d 1482, 1486 (9th Cir.), *cert. denied*, 474 U.S. 931, 106 S.Ct. 265, 88 L.Ed.2d 271 (1985), and cannot assert a claim of right based on a statute (as in *Bowen* and similar cases [7] ), plaintiffs' claim must be brought, if at all, in the Claims Court. Even there, however, they cannot obtain the relief requested here, for "[t]he sole remedy for an alleged breach of contract by the federal government is a claim for money damages, either in the United States Claims Court under the Tucker Act, 28 U.S.C. § 1491(a)(1), or, if damages of no more than $10,000 are sought, in district court under the Little Tucker Act, 28 U.S.C. § 1346(a)(2)." *Sharp v. Weinberger*, 798 F.2d 1521, 1523 (D.C.Cir.1986). Indeed, in *Sharp* this Circuit held that "[t]he waiver of sovereign immunity in the Administrative Procedure Act does not run to actions seeking declaratory relief or specific performance in contract cases, because that waiver is by its terms inapplicable if 'any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought,' 5 U.S.C. § 702, and the Tucker Act and Little Tucker Act impliedly forbid such relief." Furthermore, the APA does not confer judicial review where there exists some "other adequate remedy in a court," 5 U.S.C. § 704, and the availability of a remedy in Claims Court (even if not the remedy sought) is adequate for this purpose. *See Thurston v. U.S.*, 696 F.Supp. 680, 682 (D.D.C.1988), *citing Internat'l Engineering Co.*, 512 F.2d at 580–81.

### III

Accordingly, because this Court lacks jurisdiction over a contract claim brought against the federal government, it is hereby

---

**7.** This is *not* an "action seeking to enforce [a] statutory mandate" as was *Bowen*, *see* 487 U.S. at 900, 108 S.Ct. at 2735, nor is it an attempt to secure "funds to which a statute allegedly entitles" plaintiffs, as in *Maryland Dep't of Human Resources v. Dep't of Health & Human Svcs.*, 763 F.2d 1441, 1446 (D.C.Cir.1985).

ORDERED that the pending motions are denied as moot, since it is

FURTHER ORDERED that this case is dismissed.