**THOMAS CREEK LUMBER AND LOG COMPANY, Plaintiff,**

v.

**Edward MADIGAN, Secretary of the U.S. Department of Agriculture, et al., Defendants.**

Civ. No. 92–1164–JO.

United States District Court, D. Oregon.

Feb. 26, 1993.

Robert L. O'Halloran and Joseph A. Yazbeck, Jr., Bennett Yazbeck & O'Halloran, P.C., Portland, OR, for plaintiff.

Riley J. Atkins, United States Attorney's Office, Portland, OR; Stuart M. Gerson, U.S. Department of Justice, Civ. Div., Fed. Prog. Branch; and Thomas W. Petersen and Brad Fagg, Dept. of Justice, Commercial Litigation Branch–CV Branch, Washington, DC, for defendants.

AMENDED OPINION AND ORDER

ROBERT E. JONES, District Judge:

Plaintiff, an Oregon logging company, has charged the government with violating the federal Debt Collection Act ("DCA") in connection with credit offsets levied following a determination by the United States Forest Service ("Forest Service") that plaintiff un-

dervalued timber it cut on Forest Service land.

The government, in its motion to dismiss, argues that Thomas Creek is incorrectly seeking to invoke this court's jurisdiction to resolve purely contractual disputes governed by the Contract Disputes Act ("CDA"). Such disputes, the government alleges, are within the exclusive jurisdiction of the United States Court of Federal Claims or an agency board of contract appeals.

Should this court decide it has jurisdiction in this matter, the government requests that a protective order be entered and this matter be stayed pending the outcome of parallel criminal investigations of the parties involved.[1]

Thomas Creek, in opposing the motion, says its complaint alleges violations of procedural due process, statute and regulation. These allegations, Thomas Creek says, show that the contracts between Thomas Creek and the government are not the source of Thomas Creek's rights or its actions; rather, the basis of its claims is the government's failure to abide by the DCA and applicable regulations prior to proceeding with administrative offsets.

BACKGROUND AND FACTS

Thomas Creek has purchased timber sale contracts from the Forest Service since 1983. Purchasers pay the Forest Service only for merchantable, non-defective timber cut and removed from federal public forests. In order to determine the price of the trees that have been cut down, the timber is "scaled," which means it is measured and graded.

The Forest Service alleges that certain third-party scalers systematically favored Thomas Creek by intentionally grading good timber as defective or non-merchantable. Upon the basis of this allegation, which the Forest Service says stems from an analysis of scaling records, the Forest Service issued Contracting Officer's Decisions ("CODs") with respect to 24 of Thomas Creek's previously awarded timber sale contracts—including 14 in the Willamette National Forest ("Willamette")—which concluded that Thomas Creek owed the government the difference between the amount the government billed for the timber and the amount it was actually worth.

The government says its claims against Thomas Creek exceed $1.4 million. A year ago the Forest Service notified Thomas Creek that it intended to offset the Willamette portion of Thomas Creek's alleged debt ($831,310, plus interest) using any Thomas Creek funds held by the Forest Service. Thomas Creek sought review of the offset determination and asked to see the agency records related to the debts.

The initial reviewing officer found the offset decision valid. According to Thomas Creek, the officer contended that the only agency record relating to the debt were the CODs and refused to grant Thomas Creek a pre-deprivation hearing. Thomas Creek then submitted a brief and raised the lack of procedural due process and defendants' violation of the DCA and applicable regulations.

A second reviewing officer also confirmed the offset decision. Defendants then started the offset and seized over $84,000 in purchaser credits that Thomas Creek had earned, plus $38,000 in deposits on timber contracts the company had made.

Thomas Creek claims that as a result of the threats of further offsets it has been effectively shut out of bidding on additional Forest Service timber sales. It says that unless defendants are prevented from additional offsets pending compliance with the DCA and applicable regulations, Thomas Creek will not be able to bid on Forest Service timber sales and will be forced out of business.

Thomas Creek filed two actions in the United States Court of Federal Claims ("claims court"), seeking to challenge the Forest Service's offsets. The government moved to consolidate, arguing that the offsets could not effectively be challenged without

---

1. One scaler involved in the alleged theft of timber, Paul Knapp, was convicted in this district in July for participating in a scheme to fraudulently scale timber to the advantage of various timber purchasers. He was acquitted of a separate conspiracy charge. According to the government, the criminal investigation of Thomas Creek is related to the Knapp conviction.

reference to the underlying contractual debts. Thomas Creek opposed consolidation. Brent Walker, Thomas Creek president, says he was advised by Judge Wiese of the claims court in a telephone conference that the claims court could not offer injunctive relief. As a result of that conference, Walker says that he agreed to voluntarily dismiss his two claims court actions without prejudice and seek relief in this court.

This past fall, Thomas Creek sought preliminary and permanent injunctions against the government, asking that the offsets be revoked and future offsets be suspended, pending defendants' compliance with the DCA and applicable regulations.[2] By agreement of the parties, a hearing on the preliminary injunction was stayed pending a ruling on the government's motion to dismiss.

## STANDARD OF REVIEW

The court should not dismiss a complaint unless it appears beyond doubt that plaintiff cannot prove any facts in support of its claim which would allow it relief. *Durning v. First Boston Corporation*, 815 F.2d 1265, 1267 (9th Cir.1987). All allegations of material fact are considered true and construed in the light most favorable to the nonmoving party. *Id.*

## DISCUSSION

1. *The government's motion to dismiss.*

The government argues that the CDA provides the exclusive procedures applicable to all contract disputes, including those at issue in this case, and that the Administrative Procedures Act ("APA") precludes review by this court in circumstances such as these. The basis of the government's argument is that Thomas Creeks' claims are in essence contractual. Specifically, the government asserts that Thomas Creek objects to the fact that deposits it made are being applied to "debts" the Forest Service says it has incurred, and wants to challenge the basis of the "contract" debts and "contractual" accountings.

Defendants argue that Thomas Creek's claims are subject to claims court jurisdiction pursuant to the CDA and the federal Tucker Act, which gives the claims court jurisdiction over claims against the government involving more than $10,000 which are based on contracts with the government.

Thomas Creek counters that the allegations in its complaint show that the contracts between Thomas Creek and the government are not the source of Thomas Creeks' rights or actions; rather, the basis of its claims is the government's failure to abide by the DCA and applicable regulations prior to proceeding with administrative offsets. Thomas Creek says it is seeking not a declaration of contract rights but rather intervention by the court to require the government to comply with statutory and regulatory requirements before it levies offsets.

Thomas Creek also argues that because it seeks injunctive, not monetary relief, this is the proper court.

Whether or not a particular action is at essence a contract action depends on both the source of the rights upon which plaintiff bases its claims and upon the type of relief sought. *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C.Cir.1982).

> Although it is important on the one hand to preserve the Tucker Act's limited and conditioned waiver of sovereign immunity in contract actions, we must not do so in terms so broad as to deny a court jurisdiction to consider a claim that is validly based on grounds other than a contractual relationship with the government.

*Id.*

The Ninth Circuit case *Laguna Hermosa Corp. v. Martin*, 643 F.2d 1376 (9th Cir. 1981), also addressed the Tucker Act's limitations:

> The Tucker Act applies only to claims for money damages. It does not preclude review of agency action when the relief sought is other than money damages ... A district court does not lose jurisdiction over a claim for non-monetary relief simply

---

**2.** Defendants in this action are Edward Madigan, Secretary of the United States Department of Agriculture (which oversees the Forest Service); Dale Robertson, Forest Service Chief; and John Lowe, Regional Forester for the Forest Service's Region 6.

because it may later be the basis for a money judgment.

*Laguna Hermosa,* 643 F.2d at 1379.

A similar conclusion was reached in *Rowe v. United States,* 633 F.2d 799 (9th Cir.1980). However, the Ninth Circuit has expressly limited the holdings of both cases to their specific facts. *Price v. United States General Services Admin.,* 894 F.2d 323, 324 n. 3 (9th Cir.1990). *Rowe* involved the Alaska Native Claim Settlement Act, while *Laguna Hermosa* involved the Reclamation Development Act of 1974.

This limitation was stated in *North Side Lumber Company v. Block,* 753 F.2d 1482 (9th Cir.1985), a case in which the Ninth Circuit held the district court had jurisdiction over a claim by plaintiff timber companies that enforcement of government timber contracts would violate federal laws, including the Multiple–Use Sustained–Yield Act of 1960.

> Like the claims in *Laguna Hermosa* and *Rowe,* the statutory claim does not seek a declaration of contract rights against the government. Rather, it asks for a declaration that, whatever the content of those rights, federal statutes preclude the government from enforcing them.

*North Side,* 753 F.2d at 1486. The Ninth Circuit found that another claim, one charging impracticability, *was* subject to the Tucker Act's implied restrictions on relief. *Id.*

■ I do not believe that claiming APA violations is sufficient to invoke the jurisdiction of this court. The facts in this case are similar to those in *Spectrum Leasing Corp. v. United States,* 764 F.2d 891 (D.C.Cir.1985), in which Spectrum Leasing Corporation accused the government of violating its rights under the DCA and sought an injunction compelling the government to stop withholding payments due under a contract. Spectrum argued that Section 702 of the APA and the general federal question statute conferred subject matter jurisdiction on the District Court. The District of Columbia Circuit disagreed:

> Spectrum's arguments, however, do not properly consider the limitations of section 702. Congress restricted section 702's

waiver of sovereign immunity by stating that nothing in the APA "confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." ... The Tucker Act ... operates as such a limitation of section 702 in cases based on contracts with the federal government ... It is clear from the APA's legislative history that section 702's waiver of sovereign immunity may not be used to circumvent the jurisdictional and remedial limitations of the Tucker Act.

*Spectrum,* 764 F.2d at 892–93.

■ The Ninth Circuit has limited the holdings of *Laguna Hermosa* and *Rowe* to the facts of those cases. Additionally, I do not find that a claim brought under the APA is sufficient to overcome the jurisdictional and remedial limits of the Tucker Act. Accordingly, I grant defendants' motion to dismiss.

Apparently discovery in the claims court case was stayed pending the parallel criminal investigation. The government asks that discovery be stayed in this case pending the disposition of criminal proceedings in order to avoid improper compromise of civil and criminal actions to the detriment of both proceedings. Following oral arguments on this motion, I issued a provisional opinion that this court has jurisdiction but stayed the action for 45 days pending the outcome of the criminal investigation.

As I have now ruled that this court does not have jurisdiction over this matter, I find that defendants' motions for a stay and protective order are moot.

## CONCLUSION

Defendants' motion to dismiss, # 18–1, is GRANTED. Defendants' motions for a stay/protective order, # 20–1 and # 20–2, are DENIED AS MOOT.