**MOTOROLA, INC., et al., Plaintiffs,**

v.

**William PERRY, et al., Defendants.**

**Civ. No. 95–712(TFH).**

United States District Court, District of Columbia.

March 6, 1996.

William A. Dobrovir, Warrenton, VA, for Plaintiffs.

Asst. U.S. Atty. Broderick Lynn Thomas, U.S. Attorney's Office, Washington, DC, for Defendants.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

In this action the plaintiffs seek to compel the defendants to issue Treasury checks as payment for goods and services supplied by the plaintiffs. The parties have filed cross-motions for summary judgment, which are now fully briefed. For the reasons discussed below, the defendants' motion for summary judgment [1] will be granted and the plaintiffs' motion for summary judgment will be denied.

## I. BACKGROUND

The plaintiffs, Motorola, Inc. ("Motorola") and Arkansas–Louisiana Gas Company ("ALGC"), have brought suit against William Perry, in his capacity as Secretary of Defense ("DoD"), the Defense Finance and Accounting Service ("DFAS"),[2] and Charles A. Bowsher, in his capacity as head of the General Accounting Office ("GAO"). The plaintiffs claim to have sold various supplies to a United States Army facility, the Pine Bluff Arsenal, for which payment in the form of Treasury checks was authorized. The plaintiffs allege that in February 1984, Pine Bluff Arsenal caused a Treasury check to be issued to each plaintiff, in the amounts of $242,-721.40 for Motorola and $244,500.76 for ALGC.

The plaintiffs allege that although these checks were issued, the Treasury's records show that neither check was cashed. Moreover, the plaintiffs claim they never cashed or negotiated the checks in question. The checks, if they were indeed uncashed, outstanding and unpaid, became non-negotiable by operation of law on October 1, 1990. *See* 31 U.S.C. § 3328; 31 C.F.R. § 240.3(a)(2)

---

1. The defendants' motion sought dismissal of the complaint, or, in the alternative, summary judgment. Because the defendants have presented exhibits to the Court to support their motion, and because these exhibits played some role in the Court's analysis, the Court will treat the defendant's motion as a motion for summary judgment pursuant to Fed.R.Civ.P. 56.

2. DFAS is a civilian agency of the DoD that consolidates and directs the "finance and accounting requirements, systems, and functions" for the DoD and related entities.

("The Commissioner shall not be required to pay a Treasury check issued before October 1, 1989 unless it is negotiated to a financial institution no later than October 1, 1990.").

On June 14, 1993, more than nine years after the first checks were issued, the plaintiffs asked DFAS to issue replacement checks. This request came after Intersource, Inc., a private company in the business of "locating funds held by government entities and owed to private entities," alerted the plaintiffs to the allegedly outstanding checks in question. Plaintiffs' Motion for Summary Judgment at 6–7. The defendants refused to issue replacement checks.

The plaintiffs seek a declaratory judgment that defendants are required to reissue or are required to cause or authorize the Treasury to reissue to each plaintiff a replacement check for those that have expired. They also ask that defendants be "enjoined from continuing to refuse to reissue or to authorize or cause Treasury to·reissue such replacement checks." Complaint at 1. Finally, plaintiffs also seek a declaratory judgment that the defendants' interpretation of 31 U.S.C. § 3702(b), a limitations provision on claims, is contrary to law.

## II. ANALYSIS

Of the several defenses presented, only two require discussion. The defendants argue that (1) this court lacks subject matter jurisdiction over this action and (2) absent such jurisdiction, this matter should not be transferred to the Court of Claims. Each will be discussed in turn.

### A. Subject Matter Jurisdiction

The plaintiffs have brought suit against agencies of the United States. These defendants enjoy sovereign immunity, unless it has been waived, and " 'the terms of the consent to be sued in any court define that court's jurisdiction to entertain the suit.' " *A & S Council Oil Co., Inc. v. Lader*, 56 F.3d 234, 238 (D.C.Cir.1995) (quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941)).

The defendants argue that while their immunity has been waived in cases such as this one, the terms of the waiver lay jurisdiction in the Court of Federal Claims. Specifically, the defendants argue that both the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491 (1994),[3] and the Contracts Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1987 & Supp.1995) ("CDA") compel this conclusion.

Although the Tucker Act and the CDA provide a waiver of sovereign immunity, the two statutes in conjunction prevent district courts from exercising jurisdiction in matters such as this one. The Tucker Act limits district court jurisdiction to civil actions and claims not exceeding $10,000 in amount. Furthermore, the Tucker Act deprives district courts of jurisdiction over claims "founded upon any express or implied contract with the United States" and subject to sections 8(g)(1) and 10(a)(1) of the CDA. 28 U.S.C. § 1346(a)(2).

1. *Monetary Cap.* At first blush, the complaint would seem to fit within the Tucker Act's limitation on district court jurisdiction to controversies involving amounts less than $10,000. After all, the complaint requests declaratory and injunctive relief, monetary relief is unmentioned. However, a plaintiff may not sidestep Tucker Act jurisdictional requirements by artful pleading. Tucker Act jurisdiction may not be avoided by converting a complaint for monetary relief into a complaint for declaratory or injunctive relief. *Kidwell v. Dep't of the Army, Bd. for Correction of Military Records*, 56 F.3d 279, 284 (D.C.Cir.1995); *Van Drasek v. Lehman*, 762 F.2d 1065, 1071 n. 11 (D.C.Cir.1985).

While the plaintiffs' complaint does not seek monetary relief on its face, it is intended to secure monetary relief in excess of $240,000 for each plaintiff, surpassing the statutory limit of $10,000 imposed by the Tucker Act. This circuit's Court of Appeals has stressed that a complaint does not "in essence" seek monetary relief merely because it hints at a monetary reward, or because success on the merits might obligate

---

3. 28 U.S.C. § 1346(a)(2) is often referred to as the Little Tucker Act, while 28 U.S.C. § 1491(a)(1) is referred to as simply the Tucker Act. References to the Tucker Act herein will be to both provisions collectively unless otherwise noted.

the United States to pay the plaintiff. For instance, in *Kidwell,* the Court of Appeals concluded plaintiff's request for a change in his Navy discharge status was not essentially a request for monetary relief, even though the plaintiff stood to benefit financially from a change in discharge status. The Court noted that a distinct benefit, apart from plaintiff's potential pecuniary gain, would inure to the plaintiff as a result of a change in discharge status, because the shame associated with failing to receive an honorable discharge would be alleviated. Moreover, the Court pointed out that any financial benefit plaintiff would receive as a consequence of an adjustment in his discharge status would not come from the District Court's exercise of jurisdiction. The Navy's compensation system, not the district court, would determine how funds would be meted out based on plaintiff's discharge status. 56 F.3d at 285.

This case stands in contrast to *Kidwell.* Here, the plaintiffs' request for declaratory and injunctive relief has little if any value distinct from the ability of such judgments to grant monetary relief. Indeed, the complaint provides a ready example of artful pleading. Plaintiffs ask this Court to enjoin defendants "from continuing to refuse to reissue or to authorize or cause Treasury to reissue such replacement checks." In other words, the plaintiffs request payment for the materials they provided. Plaintiffs also seek a declaratory judgment which in essence declares they must be paid. Monetary relief would therefore flow directly from the exercise of the court's jurisdiction. Because the request for declaratory and injunctive relief is " 'negligible in comparison' with the potential monetary recovery," jurisdiction may not be invoked under the Tucker Act, because the complaint seeks relief in excess of $10,000. *Kidwell,* 56 F.3d at 284 (quoting *Hahn v. United States,* 757 F.2d 581, 589 (3d Cir. 1985)).

■ *2. Bar on CDA Claims.* The Tucker Act does not permit a district court to exercise jurisdiction in instances where a claim is "founded upon any express or implied con-

tract with the United States" and is subject to sections 8(g)(1) and 10(a)(1) of the CDA. 28 U.S.C. § 1346(a)(2).[4] The CDA applies to any express or implied contract entered into by an executive agency for the procurement of, among other things, property and services. 41 U.S.C. § 602(a). Whether or not an action is founded upon a contract depends upon (1) the source of the rights upon which a claim is based, and (2) the type of relief sought. *Megapulse, Inc. v. Lewis,* 672 F.2d 959, 968 (D.C.Cir.1982).

■ The CDA applies in this instance because the plaintiffs' rights flow directly from express contracts with executive agencies. Motorola requests payment for the electronic equipment it provided, and ALGC seeks payment for supplying natural gas, both under express contracts for the procurement of property within the meaning of the CDA. Even if statutes and regulations dealing with the issuance and cancellation of Treasury checks are implicated, as plaintiffs argue, "it is possible to conceive of this dispute as entirely contained within the terms of the contract." *Ingersoll–Rand Co. v. United States,* 780 F.2d 74, 77 (D.C.Cir.1985). The plaintiffs are seeking payment of consideration for their contractual performance. The plaintiffs' claims are not founded upon the Treasury checks that were initially issued to them; those have become non-negotiable. Instead, the plaintiffs seek to enforce the underlying obligations the Treasury checks represented. *See* 31 U.S.C. § 3328(a)(3) (1994) (underlying obligation for which Treasury check is issued remains intact after check is canceled).

■ Moreover, the relief sought here is contractual in nature. The request for declaratory and injunctive relief is a request for payment of the contract price. This may be correctly seen as a request for money damages, or a request for specific performance. The CDA may not be circumvented merely by avoiding a request for damages. *Ingersoll–Rand,* 780 F.2d at 79. In that case, the plaintiff disputed the termination of a supply

---

**4.** Instead, these actions are properly heard by the Court of Federal Claims or the United States Court of Appeals for the Federal Circuit. 41 U.S.C. §§ 605(a), 606, 607(g)(1), 609(a)(1); 28 U.S.C. § 1491(a)(3).

contract with the Air Force, and sought declaratory and injunctive relief requiring the Air Force to reinstate the award of the contract to the plaintiff. The Court of Appeals looked beyond the request for declaratory and injunctive relief and determined that the practical effect of granting the plaintiff's request would be to require the government to perform on the contract. *Id.* at 75, 79–80. The same situation prevails here. The plaintiffs request that the defendants be forced to perform their part of the bargain by tendering payment on the contracts.

■ According to the plaintiffs, the CDA does not apply because the contracts were fully performed 11 years ago when the supplies were delivered and the checks issued. However, the plaintiffs ignore the fact that the checks are no longer valid. While they were valid and outstanding, they merely suspended the underlying obligation, but did not extinguish it. *Cf.* U.C.C. § 3–310 (1991) (Revised Article 3); U.C.C. § 3–802 (1991) (Prior Article 3).[5] If the checks were not negotiated or cashed, as plaintiffs maintain, the defendants' contractual obligations remain uncompleted.

■ *3. APA Waiver of Sovereign Immunity.* The plaintiffs argue that even if the Tucker Act and the CDA bar jurisdiction here, this court has jurisdiction under 28 U.S.C. § 1331 (1994) (federal question), or 28 U.S.C. §§ 2201–2202 (1994) (declaratory judgment). "[A]lternative sources of jurisdiction are relevant only if there is an alternative waiver of sovereign immunity." *DSI Corp. v. Secretary of HUD,* 594 F.2d 177, 180 (9th Cir.1979) (citation omitted). The plaintiffs argue that the Administrative Procedure Act, 5 U.S.C. § 702 (1994) ("APA"), provides such a waiver.

This contention is without merit. The APA does not confer jurisdiction "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. The Tucker Act

impliedly forbids declaratory relief and specific performance in contracts cases, and so the APA immunity waiver does not apply. *United States Info. Agency v. Krc,* 989 F.2d 1211, 1216 (D.C.Cir.1993) (citing *Sharp v. Weinberger,* 798 F.2d 1521, 1523 (D.C.Cir. 1986)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 371 (1994). In *Sharp,* the Court held that since the Tucker Act and the Little Tucker Act make a claim for money damages the sole remedy in a breach of contract action against the government, other relief is implicitly forbidden. *Sharp,* 798 F.2d at 1523. *See also Transohio Savings Bank v. Director, Office of Thrift Supervision,* 967 F.2d 598, 611 (D.C.Cir.1992) (noting that courts "have interpreted the Tucker Act as providing the *exclusive* remedy for contract claims against the government, at least vis a vis the APA.") (emphasis in original).

■ Even though the plaintiffs also raise a federal statutory claim, this does not provide an independent basis for jurisdiction in this court. The plaintiffs seek a declaration that defendants' interpretation of 31 U.S.C. § 3702(b) is contrary to law. This provision imposes a six year limitation period on certain claims against the United States. Assertion of jurisdiction to resolve plaintiffs' statutory claim would be inappropriate in this case because the entire action is founded upon a contractual issue. In a similar case, the Court of Appeals determined that a claim with some statutory elements was essentially contractual. In *Spectrum Leasing Corp. v. United States,* 764 F.2d 891 (D.C.Cir.1985), the plaintiff, Spectrum Leasing Corporation ("Spectrum") provided data processing equipment to the General Services Administration ("GSA"). GSA became dissatisfied with the product plaintiffs were supplying, and returned Spectrum's invoices unpaid. Spectrum brought suit in federal district court, claiming GSA's failure to pay was in violation of the Debt Collection Act of 1982, 31 U.S.C.A. §§ 3701 et seq. (1983 & Supp. 1995). Spectrum sought both an order de-

---

**5.** While the Uniform Commercial Code is not federal law, it often reduces general principles of contract law to writing. "It is customary, where Congress has not adopted a different standard, to apply to the construction of government contracts the principles of general contract law."

*Priebe and Sons, Inc. v. United States,* 332 U.S. 407, 411, 68 S.Ct. 123, 125–26, 92 L.Ed. 32 (1947) (citing *United States v. Standard Rice Co.,* 323 U.S. 106, 111, 65 S.Ct. 145, 147, 89 L.Ed. 104 (1944) and cases cited therein).

claring that the government violated its rights under the Debt Collection Act, and an injunction to prevent GSA from continuing to withhold payments under the parties' contract. 764 F.2d at 892.

The Court rejected Spectrum's argument that Section 702 of the APA provided the necessary waiver of sovereign immunity. Instead, the Court applied the *Megapulse* test and that decided Spectrum's claims were founded upon a contract. Although the Court began with the admonition that it would not "find that a particular claim is one contractually based merely because resolution of that claim requires some reference to the contract," the Court went on to say that

> Spectrum apparently contends that the source of its right to relief in this case is the Debt Collection Act and not the contract. We disagree. Spectrum seeks an injunction requiring the government to pay monies owed for computer hardware. The right to these payments is created in the first instance by the contract, not by the Debt Collection Act. The DCA, even if it applied, confers no such right in the absence of the contract itself. Although the DCA might impose procedural requirements on the government having some impact on the contract, the Act in no way creates the substantive right to the remedy Spectrum seeks. .

764 F.2d at 892–95.

The plaintiffs here find themselves in a position similar to Spectrum's. This Court has already conducted the *Megapulse* analysis and concluded that the claims at issue in this case are founded upon contracts. As in *Spectrum*, the plaintiffs' rights are created in the first instance by their contracts with defendants, rather than by statutory provisions or Treasury regulations governing the issuance of checks. The plaintiffs' case, fully considered, would require the interpretation of federal statutes and regulations, but the gravamen of their complaint centers around performance of the contract. Because this court does not have jurisdiction to determine whether or not the defendants have breached their contractual obligations, it should not simply assume a breach has occurred and then decide what rights plaintiffs would have

under federal statutes and regulations governing the reissuance of checks.

It must be noted that the reach of *Spectrum* has limits. *Sharp* and other cases suggest that in some circumstances, when statutory and contractual issues coexist in an action, district courts can exercise jurisdiction over the statutory issues if they are sufficiently independent or sufficiently dominate the cause of action. In *Sharp*, the court divided the plaintiff's various claims into two groups. Included in the first group was the argument that the plaintiff's military reassignment violated a federal statutory provision permitting reservists to occupy civilian government positions. The second group encompassed those claims which sought either a declaratory judgment that plaintiff had a valid contract with defendant to keep the plaintiff in his present position or injunctive relief requiring defendants to perform their obligations under the reservist agreement. With regard to the latter group of claims, the Court concluded it did not have jurisdiction, as discussed above. However, with regard to the statutory claim, the Court held that it did have jurisdiction as a consequence of the sovereign immunity waiver contained in Section 702 of the APA. 798 F.2d at 1523. *See also Transohio,* 967 F.2d at 610–11 (collecting cases in which contractual claim did not bar jurisdiction of other claims).

Unlike the situation presented in *Sharp,* the plaintiffs' statutory claims here cannot be dissected from the underlying contractual dispute. The plaintiffs are entitled to new checks only if they establish as a preliminary matter that the defendants breached their contracts. This point is in dispute, because the defendants contest the plaintiffs' claim that the checks involved were not paid. Consequently, this Court will be required to make an initial finding concerning whether or not the Treasury checks issued were cashed or negotiated. In other words, the Court must decide whether the defendants performed their contractual obligations before considering the plaintiffs' rights, if any, under federal statutes and regulations governing the issuance of checks. In *Sharp,* the Court was not required to determine wheth-

er a breach of contract occurred in order to consider the plaintiff's statutory claim. The question of whether the defendants had breached federal law by transferring the plaintiff was not dependent upon any contractual claim. However, such an interrelationship exists in this case.

One other point deserves brief discussion. Plaintiffs argue that *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), must be read to provide this Court with jurisdiction. *Bowen* interpreted the Section 702 waiver expansively, rejecting the notion that the Claims Court's jurisdiction under the Tucker Act was exclusive. Instead, *Bowen* held that the Claims Court's jurisdiction was exclusive only to the extent that no other Court was granted authority by Congress to hear a claim. 487 U.S. at 910 n. 48, 108 S.Ct. at 2740 n. 48.

*Sharp*'s limitation on the breadth of the Section 702 waiver still holds after *Bowen*. In *Transohio*, the Court of Appeals declined to overrule *Sharp* and extend *Bowen* to circumstances in which another statute (like the Tucker Act) appeared to impliedly prohibit APA jurisdiction. 967 F.2d at 613. Moreover, the legislative history surrounding the Tucker Act indicates it was intended to trump the Section 702 waiver:

> Congress created a damage remedy for contract claims with jurisdiction limited to the Court of Claims except in suits for less than $10,000. The measure is intended to foreclose specific performance of government contracts. In terms of the proviso, a statute granting consent to suit, i.e., the Tucker Act, "impliedly forbids" relief other than the remedy provided by the Act.

*Spectrum*, 764 F.2d at 893 n. 2 (citing H.Rep. No. 1656, 94th Cong., 2d Sess. 12–13 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6121, 6133).[6]

To recapitulate, the plaintiffs' claims for payment on their contracts are governed by both the Tucker Act and the CDA, and not by Section 702 of the APA. The Tucker Act provides a waiver of sovereign immunity, but it lays jurisdiction in the Court of Federal

Claims for claims exceeding $10,000. Although the complaint does not seek monetary relief, pecuniary gain would be the only substantial and direct consequence of an exercise of jurisdiction in the plaintiffs' favor. The CDA also restricts federal district court jurisdiction when contract claims against executive agencies are involved. The plaintiffs clearly present contract claims, because the source of their rights derive from their contracts with the defendants, and they in essence seek contractual relief by requesting that the defendants be held to their part of the bargain. While Section 702 provides an alternate waiver of sovereign immunity, it extends only to statutory claims against the United States, not to contractual claims. However, because the plaintiffs' entire action is founded upon contractual claims, and because plaintiffs' statutory claims can not be resolved without initially addressing their breach of contract claim, this Court can not exercise jurisdiction.

## B. Transfer to the Court of Federal Claims

 A court, after discovering it lacks jurisdiction over a case, must transfer the case to a court of competent jurisdiction if it is in the interest of justice to do so. 28 U.S.C. § 1631 (1994). In this instance, transfer of the case to the Court of Federal Claims would not serve this function. Motorola and ALGC failed to submit their claims in writing to a contracting officer, and failed to receive a decision on their claims from a contracting officer. Consequently, the Court of Federal Claims can not exercise jurisdiction. 41 U.S.C. § 605(c). *See also* Judge Robert T. Peacock, A Complete Guide to the Contract Disputes Act 37 (1986) (contracting officer decisions are "linchpin" for subsequent proceedings). It would not be in the interest of justice to transfer this case when the Court of Claims would refuse to exercise jurisdiction. *A & S Council Oil Co., Inc. v. Lader*, 56 F.3d at 242. The case will there-

---

6. The Court of Appeals has also recently indicated the CDA is a "paradigm of a 'precisely drawn, detailed statute' that preempts more general jurisdictional provisions," *A & S Council Oil Co.*, 56 F.3d at 241 (quoting *Brown v. GSA*, 425 U.S. 820, 834, 96 S.Ct. 1961, 1968–69, 48 L.Ed.2d 402 (1976)), which suggests the CDA also trumps Section 702.

fore be dismissed. An order will accompany this opinion.