**MANKE LUMBER CO., et al.**
**(Mt. Adams Veneer Co.,**
**Inc.), Plaintiff,**

**v.**

**UNITED STATES, Defendant.**

No. 800–87 C.
Consolidated under No. 33–85C.

United States Court of Federal Claims.

June 30, 1999.

William Lenihan with Andrew Gala, both of Seattle, Washington, for plaintiff.

Lance J. Lerman with Richard Nockett, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

This matter is before the court on defendant's Motion to Dismiss for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1500 (1994) (hereafter " § 1500") Mt. Adams Veneer Co. and on Cross–Motions for Summary Judgment with respect to issues common to other cases in the *Manke* and *Seaboard* consolidated groups. Plaintiff's suit in the United States District Court for the District of Oregon, brought under the Administrative Procedures Act (APA), 5 U.S.C. § 702, 703 (1994), sought to compel the United States Forest Service to accept plaintiff's buy-out application pursuant to the Federal Timber Contract Payment Modification Act (FTCPMA or "the Buy–Out Act"), P.L. 98–478, October 16, 1984, 98 Stat. 2213, 16 U.S.C. § 618 (1994). Plaintiff sought declaratory and injunctive relief in district court based on the statute. Plaintiff's suit in the United States Court of Federal Claims seeks judicial review, pursuant to the Contract Disputes Act of 1978(CDA), 41 U.S.C. §§ 609–13 (1994), of the Forest Service contracting officer's decision finding that plaintiff had breached the contract and assessing damages. The case was transferred to this judge on February 4, 1999. Oral argument was held on April 19, 1999.

Underlying plaintiff's complaint is the government's claim for money damages which appears as a counterclaim. Plaintiff filed its suit here hoping to be completely relieved of liability for those damages. The operative facts in the two suits have some commonality in that both suits arise from the circumstances surrounding plaintiff's status as a purchaser of the Lynx and Siler 6 Forest Service Timber Sales. The court need not make a determination as to whether the operative facts in the two cases are the same, however, because the relief sought is different. In district court plaintiff sought to buyout its contracts pursuant to the Buy–Out Act. Here plaintiff claims it was entitled to a contract term adjustment, a remedy that would have left plaintiff fully liable under its contracts but would have extended the time for performance. As more fully explained below, because plaintiff sought different relief in these separate tribunals, plaintiff's claim here is not one "for or in respect to which" the plaintiff also had a suit pending in district court. Thus, plaintiff did not violate the jurisdictional bar of § 1500. Accordingly, defendant's Motion to Dismiss is denied.

For reasons set out below, plaintiff's Cross Motion for Summary Judgment is denied in part in accordance with the court's earlier decision in *Seaboard Lumber v. United States*, 41 Fed.Cl. 401 (1998), and with the Ninth Circuit decision in *Hampton Tree Farms v. Yeutter*, 956 F.2d 869 (9th Cir. 1992). The government's motion for summary judgment is granted as to liability. Plaintiff's defense pursuant to the decision in *United States v. Axman*, 234 U.S. 36, 34 S.Ct. 736, 58 L.Ed. 1198 (1914), however, survives the government's Motion for Summary Judgment. Accordingly, the court will determine at trial whether changes in the resale contract were material, whether damages are due, and, if so, how to calculate damages.

## FACTS

On September 12, 1978 plaintiff was awarded the Siler 6 Timber Sale Contract, No. 067661. The timber was situated in the Randale Ranger District of the Gifford Pinchot National Forest in the state of Washington. Under the terms of the contract plaintiff was to harvest, remove and purchase approximately 19,500 thousand board feet (MBF) of timber. The Siler 6 timber was about 22 miles from Mt. St. Helens which erupted in 1980, disrupting plaintiff's logging operations. During 1982 high interest rates led to a decline in residential and commercial construction. Lumber prices fell dramatically. The Siler 6 Contract expired uncompleted on September 17, 1987. Plaintiff built roads and cut, removed and paid for only 1,264 MBF of timber before the termination date. The Forest Service held plaintiff in breach and on January 23, 1987 assessed damages of $2,351,951.

Plaintiff denied breaching the contract. According to plaintiff, the Forest Service improperly denied both its application to buyout the contract and its application for an extension.

On February 3, 1987, plaintiff brought an action under the APA in the United States District Court for the District of Oregon challenging the Forest Service's denial of Mt. Adams' amended application to buy-out the Siler 6 Timber Sale contract under the FTCPMA. *See Mt. Adams Veneer v. Lyng*, Civ. No. 87–108–FR, 1987 WL 46898 (D.Or. 1987). The Regional Forester, Pacific Northwest Region, had rejected plaintiff's application for buy-out on November 18, 1985 on the grounds that Mt. Adams was an affiliate of each of the other two plaintiffs in that case, Publisher's Forest Products Co. and Puget Sound Plywood, Inc. *See* FTCPMA, 16 U.S.C. § 618(a)(7)(B) (defining affiliate). Plaintiff appealed the Regional Forester's decision to the Chief, Forest Service, on December 13, 1985 pursuant to 36 C.F.R. § 211.18(c) (1985)[1]. In its district court complaint plaintiff sought a mandatory injunction requiring the Forest Service to accept plaintiff's buy-out application, accept tender of the buy-out payment, and release plaintiff from any further obligations or liabilities under the bought-out contracts. The district court ruled that the Forest Service had properly denied Mt. Adams' application. Mt. Adams appealed. The Ninth Circuit affirmed the district court. *Mt. Adams Veneer v. United States*, 896 F.2d 339 (9th Cir.1989).

On December 31, 1987, while its appeal was pending in the Ninth Circuit, plaintiff filed a complaint in the Court of Federal Claims. In its Court of Federal Claims complaint plaintiff characterized the Forest Service's resale of the contract as a repudiation and material breach by the government claiming that the contract should have been extended pursuant to the President's Multi–Sale Extension Plan (MSEP).[2] (Comp. at ¶ 5.) Plaintiff denies breaching the Siler 6 contract and disputes that it owes the United States any damages. (Comp. at ¶ 8.) Instead, plaintiff filed its Court of Federal Claims complaint to obtain *de novo* review of the Contracting Officer's decision pursuant to

---

1. 36 C.F.R. § 211.18(c) outlines procedures for appealing decisions of Forest Service officers, including disputes arising under the FTCPMA.

2. The President's Multi–Sale Extension Plan provided for interest free extensions of certain tim-

ber sale contracts for up to five years. Companies who chose to extend their contracts forfeited eligibility for any additional extensions and accepted certain modifications to their contracts. *See* 48 F.R. 54812, Dec. 7, 1983.

the CDA. *Id.* The government filed a counterclaim for damages resulting from plaintiff's alleged breach of contract. Plaintiff's defenses to the government's counterclaim include frustration of purpose, impossibility, and commercial impracticability, all of which were rejected in other consolidated timber cases in *Seaboard Lumber v. United States,* 41 Fed.Cl. 401 (1998). Plaintiff also offers as a defense the previous material breach by the government based on its refusal to extend plaintiff's contract term.

Plaintiff joined others in a consolidated challenge to the constitutionality of the CDA, without success. *Seaboard Lumber Co. v. United States,* 15 Cl.Ct. 366 (1988); *aff'd* 903 F.2d 1560 (Fed.Cir.1990). Chief Judge Smith, to whom this case was then assigned, denied plaintiffs' motion to dismiss the government's counterclaims. He found that the Claims Court, an Article I court, had jurisdiction over the counterclaims and that the Seventh Amendment does not require that such counterclaims be tried before a jury.

In its pending Motion to Dismiss the government argues that Mt. Adams was simultaneously seeking relief from its obligations under the Siler 6 Timber Sale contract in the Ninth Circuit Court of Appeals and in the Court of Federal Claims, based on the same operative facts, and thus, that the Court of Federal Claims lacks jurisdiction due to the operation of § 1500.

## DISCUSSION

### I. The Motion to Dismiss.

The Court of Federal Claims has jurisdiction to render judgment upon any claim "by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning termination of a contract...." 28 U.S.C. § 1491(a)(2). Section 10(a)(1) of the CDA allows plaintiff to bring an action directly to the Court of Federal Claims in lieu of appealing the decision of the contracting officer to an agency board. *See* 41 U.S.C. § 609. Here, Mt. Adams seeks relief from a finding of breach and an assessment of damages pursuant to the court's jurisdictional

authority under the CDA. The court, thus, would appear to have jurisdiction.

■ Section 1500, however, deprives the court of jurisdiction "of any claim for or in respect to which the plaintiff ... has pending in any other court any suit ... against the United States." In *Loveladies Harbor v. United States,* 27 F.3d 1545, 1551 (Fed.Cir. 1994), the court concluded that before the Court of Federal Claims would be "precluded from hearing a claim under § 1500, the claim pending in another court must arise from the same operative facts, *and must seek* the same relief." (Emphasis added.) The Federal Circuit in *Loveladies* did not define "operative facts," because it found that plaintiff's district court challenge to the Army Corps of Engineers' permit denial under the APA and its Court of Federal Claims Fifth Amendment compensation claim for money damages amounted to "distinctly different types of relief in the two courts." *Id.* at 1553 (quoting *Keene v. United States,* 508 U.S. 200, 216, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993)). This court in *Marks v. United States,* 34 Fed. Cl. 387, 398 (1995) (motion to dismiss pursuant to § 1500 denied), emphasized the fact that *Loveladies* used the words "and must seek" to connect the phrases "same operative facts" and "same relief." If either is missing, § 1500 does not apply. In *Marks,* as in *Loveladies,* plaintiffs had not sought "the same relief" in both claims. Accordingly, neither court explored the definition of "same operative facts."

The Supreme Court in *Keene* used different phraseology to discuss dismissal under § 1500 than that employed by the Federal Circuit in *Loveladies.* In *Keene* the Court concluded that "the comparison of the two cases for purposes of possible dismissal would turn on whether the plaintiff's other suit was based on *substantially the same operative facts* as the Court of Claims action, at least if there was *some overlap in the relief* requested." 508 U.S. 200, 212, 113 S.Ct. 2035, 124 L.Ed.2d 118 (emphasis added). By contrast, in *Loveladies,* the court based the standard for dismissal on the "same operative facts" and the "same relief." 27 F.3d at 1551; *see also Marshall Associated Contractors v. United States,* 31 Fed.Cl.

809, 813 (1994). This exception was developed earlier in *Casman v. United States*, 135 Ct.Cl. 647 (1956), where the court held that a claim for back pay involved "entirely different" relief than did a suit for restoration to duty in district court and, therefore, that § 1500 did not apply.[3]

*Parties' interpretation of operative facts, same relief.*

■ The government argues that "[t]he two actions arose from the same operative facts: Mt. Adams' failure to cut, remove, and pay for the timber included in the Siler 6 Timber Sale Contract." (Def.'s Resp. to Pl.'s Mot. to Lift Stay at 3.) The government adds that "[a]lthough based upon different legal theories, each of these actions sought the same relief: a determination that Mt. Adams could not be held liable for damages under the Siler 6 Timber Sale Contract." (Def.'s Resp. to Pl.'s Mot. to Lift Stay at 3; Def.'s Mot. to Dismiss at 4.)

Plaintiff asserts that the two cases arise under distinctly different operative facts and seek distinct remedies. Plaintiff concludes that the operative facts in the Court of Federal Claims suit are those underlying the government's counterclaim: that a contract was awarded, that plaintiff applied for an extension and was denied, that the contract expired without being completed, that the government resold the timber and now claims damages because the timber was resold for less than the value of the timber under the original contract. On the other hand, plaintiff describes the operative facts in the district court case as those surrounding the buy-out denial: that the enactment of the FTCPMA entitled purchasers to buy-out 55% of the timber in eligible contracts, that plaintiff was eligible, applied, and was denied. As in *Loveladies* and *Marks*, here the

court need not determine whether both of Mt. Adams' claims arise from the same operative facts because, as explained below, Mt. Adams sought a different form of relief in district court than it sought here. Plaintiff sought declaratory and injunctive relief in district court to force the government to comply with plaintiff's interpretation of a federal statute, the FTCPMA. In the Court of Federal Claims, however, plaintiff seeks *de novo* review of the government's finding of breach and damages.

*Plaintiff's District Court Case*

Plaintiff argues that its district court claim under the APA challenges an administrative decision pursuant to the FTCPMA, a federal statute. FTCPMA regulations state that "Forest Service administrative decisions implementing the procedures of this subpart [Subpart E—FTCPMA] are subject to administrative review under 36 C.F.R. § 211.18." 36 C.F.R. § 223.182. Decisions of Forest Officers concerning the National Forest System are subject to appeal to the Chief of the Forest Service unless appealable to the Agriculture Board of Contract Appeals, USDA, under 7 C.F.R. part 24. *See* 36 C.F.R. § 211.18(a), (b), (c).

On December 13, 1985, plaintiff appealed to the Chief, Forest Service. Pursuant to 36 C.F.R. § 211.18(c) plaintiff filed its notice of appeal with the Regional Forester, the "deciding officer," appealing his decision of November 18, 1985. Pursuant to 36 C.F.R. § 211.18(r), the Chief affirmed the decision of the deciding officer by letter dated July 21, 1986. Because the Secretary of Agriculture did not elect to review the Chief's affirmance, that affirmance became the final administrative decision of the Department of Agriculture. Having exhausted its administrative remedies, plaintiff sought judicial review, un-

**3.** The Federal Circuit overturned "*Casman* and its progeny," including *Boston Five Cents Savings Bank, FSB v. United States*, 864 F.2d 137, 139 (Fed.Cir.1988). *See UNR Indus. v. United States*, 962 F.2d 1013, 1025 (Fed.Cir.1992), *aff'd in part sub nom. Keene*, 508 U.S. 200, 113 S.Ct. 2035, 124 L.Ed.2d 118. *Boston Five Cents Bank*, relying on *Casman*, had held that "because a declaratory judgment was sought in the district court and monetary damages in the Claims Court, both suits could be maintained even if based on the same operative facts." *UNR*, 962 F.2d at 1021.

In *Keene* the Supreme Court noted that the Federal Circuit in *UNR* had announced it was overruling five cases. 508 U.S. at 215, 113 S.Ct. 2035. The Court found, however, that it was "unnecessary to consider, much less repudiate, the 'judicially created exceptions' to § 1500 found in *Tecon Engineers, Casman*, and *Boston Five*." *Id.* at 216, 113 S.Ct. 2035. Only two of the five cases, *Brown* and *Hossein*, failed to survive the Court's ruling in *Keene*, a ruling involving time-of-filing, not relief and operative facts. The *Casman* exception thus survives.

der 5 U.S.C. § 702, in federal district court, of the Forest Service's refusal to allow plaintiff to buy-out the Siler 6 timber contract. *Mt. Adams Veneer v. Lyng,* Civ. No. 87–108–FR, 1987 WL 46898 (D.Or.1987).

If plaintiff had prevailed in district court it would have paid the statutorily established buy-out charge for up to 55% of the qualifying timber. *See* 16 U.S.C. § 618. Plaintiff would have been relieved of any further obligation on the bought-out portion of the contracts.

Plaintiff states that, according to the Secretary of Agriculture's rules, the forest service officer's denial of plaintiff's buy-out request was not contractual in nature and therefore could not have been brought in the Court of Federal Claims. Contractual decisions are excluded from appeal under 36 C.F.R. § 211.18, Appeal of Decisions of Forest Officers. Specifically that section excludes "(1) Decisions appealable to the Agriculture Board of Contract Appeals, USDA, under 7 C.F.R. part 24" and "(7) Decisions covered by the Contract Disputes Act." Plaintiff notes that if FTCPMA (buy-out) decisions were contractual in nature, administrative review would be pursuant to 7 C.F.R. Part 24, dealing with the Board of Contract Appeals, not 36 C.F.R. § 211.18 as required by the FTCPMA.

Plaintiff's claim in this court, however, is contract-based. Pursuant to the CDA, the Agriculture Board of Contract Appeals or the Court of Federal Claims shall consider and determine appeals from decisions of contracting officers relating to Forest Service contracts for procurement of certain property, services, construction, alteration, repair, or maintenance or for disposal of personal property. *See* 41 U.S.C. § 602(a), 605(b), 609(a)(1); 24 C.F.R. § 24.4(a) (1997). Plaintiff is given a choice between appealing to the Board or the Court of Federal Claims.

Plaintiff's view is supported by the district court's ruling on jurisdiction. On April 6, 1987 the government moved to dismiss plaintiff's district court suit on the grounds that it involved a contract dispute strictly within the jurisdiction of the Court of Federal Claims under 28 U.S.C. § 1346(a)(2). The district court, Judge Frye, denied the motion to dis-

miss by order dated May 28, 1987. In its accompanying opinion the court relied on the standard set out in *Megapulse, Inc. v. Lewis,* 217 U.S.App.D.C. 397, 672 F.2d 959 (1982), to determine whether plaintiff's action was based on statute or contract: "The classification of a particular action as one which is or is not 'at its essence' a contract action depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *Megapulse,* 672 F.2d at 968. The court added, however, that "a claim is not one which is contractually based merely because resolution of that claim requires some reference to a contract." *Mt. Adams Veneer v. Lyng,* decision on Motion to Dismiss at 4 (citing *Spectrum Leasing Corp. v. United States,* 764 F.2d 891, 893 (D.C.Cir.1985)). "Nor may a plaintiff avoid the jurisdictional bar of the Contract Disputes Act merely by alleging violations of a statutory provision rather than breach of contract." *Id.* (citing *Ingersoll–Rand Co. v. United States,* 780 F.2d 74, 77 (D.C.Cir.1985)). The district court found that plaintiff's action "does not seek a declaration of contract rights against the government but rather a review of the decision of the Forest Service to deny a buy-out allegedly authorized by the FTCPMA." *Id.* (citing *North Side Lumber Co. v. Block,* 753 F.2d 1482, 1486 (9th Cir.1985) (distinguishing between statute and contract based claims)).

Judge Frye explained that, "although the final decision of a court may ultimately determine what amount of money is owed to whom, this is not an action for damages, nor is this a claim properly characterized as one for specific performance. In addition, this is not an action for breach of contract." *Id.* at 5 (citing *Megapulse,* 672 F.2d at 969). Judge Frye concluded that plaintiff's buy-out related claim was based on statute, not contract, that it was not within the exclusive purview of the Court of Federal Claims, and that it was properly before the district court. Judge Frye then ruled for the government, finding that the Forest Service had not improperly denied plaintiff's buy-out application.

*Plaintiff's Court of Federal Claims case.*

In contrast to the injunctive and declaratory relief it sought in district court, in the Court of Federal Claims plaintiff seeks a finding that it was not in breach at all and owes no damages. The two forms of relief are different. Plaintiff's Court of Federal Claims suit makes no reference to its buy-out attempt. Instead, the suit here focuses on plaintiff's application under the MSEP or pursuant to contract clause B8.21 to extend the term of the Siler 6 contract. If, upon review of the contracting officer's decision, this court found that the extension was improperly denied, the result would be that plaintiff would still have been within the extension period when the Forest Service made its decision as to breach and damages. Therefore, plaintiff would not have been in breach.

The preceding analysis of the two suits demonstrates that plaintiff's buy-out claim, a statutory dispute in district court, did not seek a declaration of contract rights against the government. Plaintiff's CDA[4] claim, however, "is concerned solely with rights created within the contractual relationship and has nothing to do with duties arising independently of the contract" such as the FTCPMA. *See North Side Lumber v. Block,* 753 F.2d 1482, 1486 (9th Cir.1985). Plaintiff's CDA claim, founded upon an express contract with the United States, and subject to § 10(a)(1)

of the CDA, falls under the exclusive jurisdiction of the Court of Federal Claims.[5] *See Spectrum v. U.S.,* 764 F.2d 891, 893 n. 3 (D.C.Cir.1985).

## II. Cross Motions for Summary Judgment.

■ Although plaintiff's suit survives the government's § 1500 challenge, the court also finds that the forest service contracting officer, as explained below, properly denied plaintiff's requests for contract term extensions, based on both contract clause B8.21 and on the MSEP. Therefore, in accord with earlier findings by this court and by the Ninth Circuit, the court finds that plaintiff is liable for breach of the Siler 6 timber sale contract. Accordingly, defendant's motion for summary judgment is granted in part as to liability.

Plaintiff's Siler 6 timber contract, like other standard timber sale contracts of that time, included provision B8.21 for extending the term of the contract under certain adverse conditions. Clause B8.21 provides that a purchaser qualifies for a contract term adjustment where:

(a) Purchaser experiences a delay in starting scheduled operations or interruption in active operations either of which stops removal of Included Timber from Sale Area through curtailment in felling and bucking,

---

**4.** Plaintiff argues that a procedural anomaly in the CDA results in the defendant being the sole claimant in this case. *See* 41 U.S.C. § 605(a). Plaintiff asserts that its Court of Federal Claims suit merely seeks to require the Government to assert and prove its counterclaim for breach of contract and money damages. Plaintiff explains that by filing suit in the Court of Federal Claims under the CDA the contractor "does not assert any claim against the United States, it merely satisfies the CDA procedures, which require the United States to then assert and prove its claim." (Pl.'s Opp'n at 2.) Accordingly, plaintiff concludes that, because it is not a claimant here, § 1500 does not apply.

Plaintiff cites *Gloeckner v. United States,* 32 Fed.Cl. 742, 745 (1995), in its July 21, 1995 Motion to Lift Stay to support its assertion that § 1500 does not apply here since the government is the only claimant. In *Gloeckner* the government had brought suit in United States District Court after plaintiff had already chosen the Court of Federal Claims as its venue. Judge Yock found that Gloeckner could defend itself in the

government's district court case without running afoul of § 1500 with respect to its own Court of Federal Claims case. Here, Mt. Adams brought both suits. The court must look beyond plaintiff's assertion that it is merely filing here to compel the government to file and defend its counterclaim. The Federal Circuit has acknowledged that the government's breach of contract claim underlies plaintiff's Court of Federal Claims complaint but concluded that plaintiffs were still asserting their own rights to review under the CDA and were not merely facilitating the government's obligation to litigate a contract claim for a determination of the government's rights. *Seaboard Lumber,* 903 F.2d at 1562, 1568.

**5.** This same plaintiff has presented its request for review of the Forest Service's buy-out denial as a defense to the government's counterclaim in *Mt. Adams* No. 589–87, also before this court. In that case Mt. Adams did not seek review of the buy-out denial in district court lest it be dismissed here under § 1500.

yarding, skidding and loading, hauling or road construction, as scheduled under B6.31, for 10 or more consecutive calendar days during a Normal Operating Season due to causes beyond Purchaser's control, including but not limited to acts of God, acts of the public enemy, acts of Government, labor disputes, fires, insurrections or floods.

or

(b) Causes described in (a) substantially affect the disposition or processing of Included Timber during Normal Operating Season through their effects on primary timber processing facilities, with a resulting delay of 60 calendar days or more in use of such facilities. In such event, Contract Term Adjustment shall not extend for more than 12 consecutive months.

Plaintiff claims in its Cross Motion for Summary Judgment that, pursuant to this *force majeure* clause, the Forest Service had a duty to "enlarge the period of performance due by plaintiff on a year-to-year basis from January 1982 at least through 1987." (Pl.'s Cross Mot. for Summ. J. at 12.) Plaintiff reasons that the government's own actions during the early 80's caused interest rates to rise, reversing the upward trend of inflation, and thereby disrupted the market for timber. Plaintiff regards this government action as a *force majeure* as contemplated by clause B8.21(a). Accordingly, plaintiff believes it was entitled to an extension of time in which to perform the contract, essentially until the market was restored to its earlier vigor. The court has already rejected this argument, as raised in motions for summary judgment by Cascade Resources, Merrill and Ring, and Seaboard Lumber, in *Seaboard Lumber v. United States,* 41 Fed.Cl. 401, 414–16, 420, 421 (1998). In *Seaboard* the court found that:

> government policies which do not prevent performance but merely make performance unprofitable are not the sort of government policies referred to in a typical

*force majeure* clause. Parties cannot invoke *force majeure* clause protection merely because they are experiencing financial difficulties that are arguably caused by general government policies.

. . .

> The interruption in Cascade's removal of timber was not caused by the government's monetary policy. It was caused by, if anything, Cascade's fear of financial loss and the possibility of insolvency. And the B8.21 *force majeure* provision in Cascade's contract says nothing about allowing contract adjustment if it appears that performance may render Cascade insolvent.

*Id.* at 416.

█ "It has long been held by the Court of Claims that the United States when sued as a contractor cannot be held liable for an obstruction to the performance of the participating contractor resulting from its public and general acts as sovereign." *Horowitz v. United States,* 267 U.S. 458, 461, 45 S.Ct. 344, 69 L.Ed. 736 (1925). Plaintiff claims that "defendant, by regulating money supply and allowing interest rates to float to more than 21%, and by limiting the capital available for borrowing so that interest rates for short-term and long-term loans were essentially the same, produced a depression." (Pl.'s Reply Br. at 8.) As this court observed in *Seaboard,* however, "These acts were clearly public in nature and may properly be considered acts of the sovereign. They also were clearly not directed against this contract, nor had they any relationship with it." 41 Fed.Cl. at 419.

█ Plaintiff also claimed in its complaint that the Forest Service should have extended plaintiff's contract pursuant to the President's MSEP. The MSEP, implemented through amendment of Title 2400 of the Forest Service Manual, expanded on existing contract extension procedures so as to address a systemic problem affecting most purchasers of federal timber sales at that time. *See* 48 FR 54812, 818 (Dec. 7, 1983).[6]

---

6. The President's MSEP is an administrative remedy. It was mentioned by the President in his remarks upon signing the FTCPMA. 20 Weekly Comp. Pres. Doc. 1563 (Oct.16, 1984).

The MSEP was discussed in the legislative history of the FTCPMA, was ratified by that act, and continued in effect after the Act's passage subject to certain limitations that were made part of the

In its amended answer to the government's counterclaim, plaintiff states that defendant illegally refused to extend the contract pursuant to the MSEP. Plaintiff claims in its Cross Motion for Summary Judgment that its MSEP was timely filed and should have been granted. Unfortunately, plaintiff relied on a district court injunction, later vacated, when it decided to delay filing its MSEP application beyond the regulatory deadline. Plaintiff reasons that the injunction was in force when relied on and cannot be retroactively invalidated. A class of similarly situated timber companies[7] already failed with this argument in the Ninth Circuit. Plaintiff believes that "[t]he Ninth Circuit Court was wrong." (Pl.'s Cross Mot. for Summ. J. at 26.) This court does not.

The United States District Court for the District of Oregon, Chief Judge James M. Burns, had enjoined the Forest Service from enforcing its February 15, 1984 deadline for filing MSEP applications. *North Side Lumber Co. v. Block*, No. 83–490, slip op. (D.Or. Feb. 15, 1984). The Court of Appeals reversed, finding that the district court lacked jurisdiction over plaintiffs' contract claims. *North Side Lumber Co. v. Block*, 753 F.2d 1482 (9th Cir.1985).

Hampton went back to Judge Burns, protesting that class members who accepted a settlement agreement were having their late filed MSEP's approved. Judge Burns directed the Forest Service to accept Hampton's MSEP. *Hampton Tree Farms v. Block*, No. Civ. 85–1085 BU, 1987 WL 115596 (D.Or. Apr. 20, 1987). Chief Judge Burns was again reversed by the court of appeals which found that discrimination favoring those who accepted the settlement agreement was neither arbitrary nor capricious and that class members could not rely on the voided injunction. *Hampton Tree Farms v. Yeutter*, 956 F.2d 869 (9th Cir.1992).

In accord with the Ninth Circuit's well reasoned conclusion that Hampton, Sun Tip,

*et al.* were not entitled to have their late filed MSEP applications accepted, the court now finds that the Forest Service properly refused to accept Mt. Adams' late filed MSEP application.

■ Plaintiff asserts in this case, as did the plaintiffs in *Seaboard*, that the contract's damages provision, clause B9.4, as applied, is void as a penalty. Again, for the reasons given in *Seaboard*, 41 Fed.Cl. at 410–12, the court must reject this argument. The parties are required to calculate damages according to clause B9.4 which was among the express terms of their contract. "This was what the parties agreed to in the event of contract termination, and this is what the parties had a right to expect when termination occurred." *Engle Investors v. United States*, 21 Cl.Ct. 543, 549 (1990). As in *Engle* and *Seaboard*, here the court allows for the possibility that changes in the resale contract might change the amount of damages due. Damage clause B9.4 is enforceable as a starting point from which to begin damage calculations. Questions of fact remain for trial as to what extent, if any, damages should be reduced or eliminated due to changes in the resale contract.

### CONCLUSION

Plaintiff's CDA suit is properly before this court and is not barred by § 1500. Accordingly, the government's Motion to Dismiss for lack of subject matter jurisdiction pursuant to § 1500 is hereby denied.

Plaintiff's Motion for Summary Judgment, on the issue of whether defendant's failure to adjust plaintiff's contract pursuant to contract clause B8.21 was a breach of its duties, thereby excusing further performance by plaintiff, is denied. Nor was defendant unreasonable in refusing to accept plaintiff's MSEP application. In doing so defendant did not relinquish its right to claim damages.

legislation. S.Rep. No. 98–478, at 13 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3806, 09–13; Pub.L. No. 98–478, 98 Stat. 2213, 16 (1984). The MSEP was the President's measure, however, not the legislature's. Unlike the Buy–Out Act, the MSEP was not statutory.

**7.** These included Hampton Tree Farms and Sun Tip Co. whose cases were previously consolidated with Mt. Adams as part of the Manke group. *Hampton* and *Suntip* were dismissed by this court pursuant to § 1500.

Plaintiff's Motion for Summary Judgment is further denied as to its defenses of commercial impracticability, impossibility of performance, and frustration of purpose, for the reasons given in *Seaboard,* 41 Fed.Cl. at 416–18. Plaintiff's Motion for Summary Judgment is further denied in part as to its argument that the contract's damages provision, clause B9.4, as applied, is void as a penalty, again for the reasons given in *Seaboard,* 41 Fed.Cl. at 410–12. Damage clause B9.4 is enforceable at least as a starting point from which to begin damage calculations.

As in *Seaboard Lumber,* plaintiff's *Axman* defense survives the government's Motion for Summary Judgment. Accordingly, the court will preserve for trial the question of whether changes in the resale contract were material. Based on its findings as to materiality the court will then determine whether damages are due and, if so, how to calculate those damages.