**MANKE LUMBER CO., et al.**
**(Mt. Adams Veneer Co.,**
**Inc.), Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 589–87 C.**

United States Court of Federal Claims.

Oct. 29, 1999.

William Lenihan with Andrew Gala, both of Seattle, Washington, for plaintiffs.

Lance Lerman with Richard Nockett, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C.

## OPINION

BRUGGINK, Judge.

This matter is before the court on cross motions for summary judgment. Mount Adams' affiliates, Publishers Forest Products and Puget Sound Plywood, filed amended applications with the Forest Service to buy-out Mount Adams' Catt 30, Cortright Lava, and Siler 6[1] timber sale contracts pursuant to the Federal Timber Contract Payment Modification Act (FTCPMA or Buy–Out

Act), 16 U.S.C. § 618 (1994). These amended applications were denied as untimely filed. Plaintiffs[2] seek judicial review of that final decision by the Chief, United States Forest Service, pursuant to the Contract Disputes Act (CDA), 41 U.S.C. §§ 601–613 (1994). The case was transferred to this judge on February 4, 1999. For the reasons explained below, the court concludes that the denial was contrary to law and directs defendant to accept for consideration the amended buy-out applications of Publishers and Puget Sound as timely filed.

### FACTS[3]

Mount Adams is a general partnership conducted by Publishers Paper and Puget Sound Plywood, each holding a one-half interest in Mount Adams. The two partners, and Mount Adams itself, each submitted timely initial applications to buy-out Forest Service timber sales contracts under the Buy–Out Act. The Act permitted purchasers of federal timber to buy-out, at a discount, 55% of the volume contained in eligible contracts, up to a maximum of two hundred million board feet. The Act states that "[f]or purposes only of determining a purchaser's buy-out limitation under paragraph (2) and net worth in connection with buy-out cost under paragraph (3), concerns which are affiliates as defined under subparagraph (B) of this paragraph shall be treated as a single entity." 16 U.S.C. § 618(7)(A). Subparagraph (B) defines affiliates:

> Concerns are affiliates of each other when either directly or indirectly, one concern controls or has the power to control the other, or a third party or parties controls

1. Mount Adams' damages for breach of the Siler 6 contract remain at issue before this court in *Mount Adams Veneer Co. v. United States*, 44 Fed.Cl. 219 (1999). In No. 800–87C Mount Adams defended against the government's counterclaim by asserting that the Siler 6 contract should have been extended. This case, No. 589–87C, involves Mount Adams' attempt to buy-out the Siler 6 contract. Cross motions for summary judgment are also separately pending in this case as to Mount Adams' liability for damages for breach of the Catt 30, Cortright Lava, and Wesley 2 timber sale contracts. Mount Adams notes that there is no indication that there are any other unresolved disputes concerning buy-outs of timber under the FTCPMA.

2. The original complaint was filed by Mount Adams. The parties have stipulated, however, that Mount Adams, Publishers, and Puget Sound are all plaintiffs. *See* Jt. Stip. 1, RCFC 17(a). All three will be referred to as plaintiffs herein.

3. The parties both rely in their dispositive motions on the joint Stipulation of Material Facts. The court can rely on stipulated facts in making its determinations as to matters of law when deciding motions for summary judgment. *See Heinemann v. United States*, 796 F.2d 451, 456 (Fed.Cir.1986); *Aerolease Long Beach v. United States*, 31 Fed.Cl. 342, 354, 355 (1994).

or has the power to control both. In determining whether or not affiliation exists, consideration shall be given to all appropriate factors, including, but not limited to, common ownership, common management, and contractual relationships.

Publishers' and Puget Sound's original applications were granted. Both entities paid the buy-out charges and were relieved of further obligations under the returned contracts. Mount Adams' application, however, was denied because its affiliates had already used all of the partnership's volume entitlement.[4] Mount Adams appealed the Regional Forester's decision on December 13, 1985, claiming that it was an independent entity, not an affiliate of Publishers or Puget Sound, and was entitled to buy out its own contracts. The Chief of the Forest Service, on July 21, 1986, affirmed the decision of the Regional Forester, denying Mount Adams' buy-out application. The U.S. District Court for the District of Oregon affirmed the Forest Service, and the Court of Appeals for the Ninth Circuit affirmed the district court. The question of affiliation is no longer in dispute.

The district court declined to require the Forest Service to accept amended buy-out applications from Mount Adams' affiliates. Instead, the district court noted that "reopening of previously approved buy-out applications presents substantial questions of policy and procedure which the Forest Service is better equipped to handle than this court. Publishers and [Puget Sound] should therefore apply to the Forest Service for a redetermination of their buy-out eligibilities." *Mount Adams Veneer v. Lyng,* Civ. No. 87–108–FR, 1987 WL 46898, n. 1 (D.Or.1987). The Court of Appeals for the Ninth Circuit affirmed the district court, noting that the Secretary of Agriculture "never addressed the question of whether Puget Sound and Publishers were prohibited from amending their previously approved buy-out application." *Mount Adams Veneer v. United States,* 896 F.2d 339, 343 (9th Cir.1990). On February 13, 1990, the Ninth Circuit concluded, therefore, that that issue was not ripe for judicial review.[5] *Id.* at 344.

On May 31, 1990, Publishers and Puget Sound filed alternative amended buy-out applications. In one application Puget Sound included three of Mount Adams' contracts. In the alternative application, by Publishers, each affiliate would buy-out one-half of the same three Mount Adams contracts.[6] These amended applications were denied by Regional Forester, John Butruille, on March 23, 1992. That denial was upheld on appeal, on July 23, 1993, by David Unger, Reviewing Officer for the Chief, United States Forest Service and this action was commenced. By order dated March 30, 1995, we permitted Mount Adams to amend its reply and answer to defendants counterclaim to seek review of the Forest Service Chief's denial of its affiliates' amended buy-out application. Had ei-

---

4. Publishers and Puget applied to buy out 199,-858 and 36,745 thousand board feet (MBF) respectively, totaling 236,603 MBF. The Regional Forester, in his November 18, 1985 letter denying Mount Adam's buy-out application, stated that "[t]he volume entitlement of the Joint Venture [Mount Adams] is the total of all affiliates, in this case 200 million board feet." Exh. 5. Publishers and Puget Sound do not control each other, accordingly they are not affiliates for buy-out purposes. Both separately control Mount Adams, however. Thus, Publishers and Mount Adams are affiliates, as are Puget Sound and Mount Adams.

5. Circuit Judge O'Scannlain, dissenting, asserted that, as affiliates of Mount Adams, Puget and Publishers were entitled to include selected Mount Adams contracts in their own buy-out applications. He wrote that "the majority insists that Puget Sound and Publishers be relegated back to the Forest Service to start a new, and in

my view needless, process seeking leave to amend their original filings." 896 F.2d at 344. He characterized that process as "an exercise in futility." *Id.*

6. The latter alternative would have required that two contracts included in Publishers' original application, Hunder and Redland, be changed from "bought-out" to "defaulted" so that Publishers could buy out its half of Mount Adams' three contracts without exceeding the statutory limit of 200 million board feet. Hunder and Redland had since been resold by the Forest Service for a price greater than the original contract price and thus, with the benefit of hindsight, Mount Adams could see that their default did not lead to damages. Mount Adams did, however, leave the choice between the two alternatives to the Forest Service. The Forest Service could simply avoid any complications of dealing with the Hunder and Redland contracts by choosing Puget Sound's application.

ther of those applications been approved, Mount Adams would have avoided all liability for breach of the Catt 30, Cortright Lava, and Siler 6 contracts.

## DISCUSSION

Mount Adams filed its underlying claim pursuant to the CDA. That act gives this court jurisdiction over Mount Adams' claim because a timber sale contract is an express contract for the disposal of personal property as contemplated by the CDA. *See* 41 U.S.C. § 602(a); *Mendenhall v. Kusicko,* 857 F.2d 1378, 1379 (9th Cir.1988) (per curiam); *Spectrum v. United States,* 764 F.2d 891, 893 n. 3 (D.C.Cir.1985).

The Forest Service denied both amended applications as untimely under implementing regulation 36 C.F.R. § 223.172(b). Section 223.172(b) places a 30–day time limit on the filing of an amended buy-out application. Section 223.172(b)(1) provides:

A purchaser may submit an amended application for contract buy out within 30 days after receipt of notification of:

(i) The Regional Forester's determination that a contract elected for buy out is not a qualifying contract, is not a qualified defaulted contract, or, except for rejection of a conditionally returned contract for failure to timely complete contract obligations to a logical stopping point, is ineligible to be a conditionally returned contract;

(ii) The Bureau of Land Management's determination of the conditions, if any, that must be met for a conditionally returned contract to be accepted for buy out.

(iii) The Regional Forester's determination of the conditions, if any, that must be met for a conditionally returned contract to be accepted for buy out.

The basis for rejection of Mount Adams' original buy-out application—its affiliates had already used up the partnership's entitlement—is not one of the types of rejections listed in § 223.172(b). Despite that fact the agency denied the reapplication as untimely, referring to this section. Plaintiffs argue that the regulatory time limit on amended buy-out applications does not apply to the present circumstances, in which the denial is on a ground not listed, and the applicant has appealed the denial and sought judicial review.

The government reads § 223.172(b) broadly. First, it suggests that, even if plaintiffs were entitled to submit an amended application, they had to do so within 30 days of the denial, citing § 223.172(b). Alternatively, it contends that the listing in § 223.172(b) of specific reasons for application denial implies that no other reasons for denial provide a basis for filing an amended application, irrespective of when it is filed. Defendant's argument thus is that either the 30–day time limit at 36 C.F.R. § 223.172(b) applies to plaintiffs' amended buy-out applications (because the regulations do not include any other reference to amended applications) or the absence of any other provision for reapplication deadlines means that the only bases for reapplication are those which must occur within 30 days.

 This court gives substantial deference to an agency's interpretation of a statute it has been assigned to administer. *See Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Here, however, the Forest Service did not make, much less notify plaintiffs of, any rule establishing a time limit in which to submit amended buy-out applications under the circumstances at issue in this case.[7] The agency is simply offering an uncodified

---

**7.** The Act does require that:

Timber from returned or defaulted contracts shall be offered for resale in an orderly fashion as part of, and not in addition to, the normal congressionally authorized timber sales program, and in a manner which does not disrupt regional markets or artificially depress domestic timber prices. Timber from returned or defaulted contracts shall be given preference for resale in the Forest Service timber sales programs.

16 U.S.C. § 618(a)(5)(A). While this language may, as Mr. Unger suggests, provide a rational basis for the agency's 30–day time limit found at 36 C.F.R. § 223.172(b), it does not dictate rejection of an amended buy-out application that complies in every respect with the terms of the statute but was delayed by orderly progression through the appeal process.

interpretation of the application of the FTCPMA in a particular circumstance, which for aught that appears, is unique.

■ The difficulty with defendant's first argument is that, if the origin of a comprehensive 30–day limit is § 223.172(b), then it would appear that the specific terms of that section would, per force, also apply. The result would be a limited number of triggering circumstances, none of which apply here. Defendant, in short, wants to borrow the concept of a 30–day time limit on reapplications, but does not want to accommodate the balance of the provision. Plaintiffs argue, however, and the court holds, that the 30–day limitation on filing an amended buy-out application does not apply under all circumstances and is instead triggered only by written notice to the purchaser that the contract elected for buy-out falls into one of the categories listed in § 223.172(b)(1). The language of the regulation is clear as to when the time limit applies. It does not apply here.

The second argument is problematic for a number of reasons. The most basic is that plaintiffs' right to file an amended application has been conceded. David Unger, reviewing officer for the Chief of the Forest Service, concluded, and the government reiterated in its moving brief, that "Mount Adams could have filed an amended buy-out application within the regulatory deadline but chose not to." (Unger Exh. 16, July 23, 1993, at 5; Def.'s Mot. Summ. J. at 12). That right to file an amended application could only have been prompted by a denial rationale that is not listed in the regulation and, therefore, not subject to the 30–day limit.

There are more principled and practical reasons that the court concludes plaintiffs had a right, in these circumstances, to submit an amended application. The regulations provided for administrative review of Forest Service decisions implementing the buy-out procedures. 36 C.F.R. §§ 211.18, 223.182 (1985). The Regional Forester's determination as to affiliation is such a decision. Why should plaintiffs have filed amended applica-

tions while their appeal was in process? The government's approach assumes that Mt. Adams had to guess right on the disputed legal and factual issue of whether it would be treated as an affiliate. The price of guessing wrong was a waiver of the right to file a correctly framed application-because an application filed after appeal would be untimely, despite the fact that the original application was timely. Absent some clear notification, plaintiffs should not be required, by an expiring time limit, to choose between the appeal process and amended applications.

Nor is there prejudice to the government. The agency plainly had notice of the possibility of an alternative application long before the decision as to affiliation.[8] Moreover, contrary to defendant's concern, nothing needs to be undone with respect to the contracts previously approved for buyout by Puget Sound and Publishers. Mr. Unger states that "[p]ursuant to section 618(a) (5)(A), the Forest Service resold all but one of Mount Adams' five defaulted sales. The Lynx Timber Sale was not resold for environmental reasons. The four sales that were resold (Cortright Lava, Catt 30, Wesley 2, and Siler 6) ... are closed and cannot now somehow be revived to provide buy-out relief to Mount Adams." (Exh. 16 at 4 n. 5.) Mr. Unger notes the impracticality of holding contracts open while purchasers exhaust all administrative and judicial remedies.

The relief plaintiffs seek does not require that the contracts be "revived," however. Nor was there any need to hold contracts open during the appeal process. The contracts were not held open. Instead, they were found to be in default, resold, operated by the resale purchasers, and damages were calculated according to contract damage clause B9.4. All that remains is a bookkeeping procedure: applying buy-out charges, plus interest, in lieu of damage payments. The government can simply accept Mount Adams' three contracts for buy-out in the name of Puget Sound while all the contracts previously bought-out by Publishers and Puget remain bought-out and undisturbed.

8. Nor did the agency advise Mount Adams that it believed a time limit applied even when Publishers wrote, on November 25, 1985, that it "will wish to file a corrected buy-out plan" if Mount Adams is treated as an affiliate. (Exh. 8. Publishers' letter to Tom Coston, Regional Forester.)

Presumably the plaintiffs could have presented their applications in the alternative from the beginning. If the Forest Service disagreed with the timber companies' assumption of non-affiliation, the resort to a different assemblage of contracts could have been simultaneously considered. The alternative application would, correctly, be viewed as filed *nunc pro tunc* as of the date of the original application.

What transpired here, however, is substantively the same. Publishers' letter of November 25, 1985, recites,

> if the Forest Service is successful in its contention that Mt. Adams Veneer Co. cannot buy out timber without being treated as an affiliate of Publishers, the latter will wish to file a corrected buy-out plan which substitutes timber sales for those now covered by the plan filed with you.

The Forest Service thus had knowledge as early as November, 1985 that plaintiffs were contemplating re-applying if their appeal was unsuccessful.

■ Absent any other specific time limitation, Mount Adams is required under the doctrine of laches to act within a reasonable time so as not to unfairly prejudice the government. *See Yerxa v. United States,* 11 Cl.Ct. 110 (1986), *aff'd,* 824 F.2d 978 (1987); *see also Kelly v. United States,* 10 Cl.Ct. 579 (1986), *aff'd,* 826 F.2d 1049. Plaintiffs filed their amended applications on May 31, 1990, within four months following the decision of the Ninth Circuit ending the appeal process as to affiliation. No prejudice to the government has been shown. Without deciding that a timber company could amend applications indefinitely for any reason, the court holds that prompt reapplication after resolution of an appeal is consistent with the regulation.

---

9. Plaintiffs emphasize their "statutory entitlement" to the buy-out, pointing out that the statute states that the Secretary of Agriculture is *"directed* to permit a requesting purchaser to return to the Government a volume of the purchaser's *timber contracts"* according *to the* terms given. 16 U.S.C. § 618(a)(1) (emphasis added). The agency's own rules at § 223.172(c) state that "the Regional Forester *will* approve an

## CONCLUSION

The amended buy-out applications by Publishers and Puget Sound were not time barred by 36 C.F.R. § 223.172(b). Accordingly, defendant's motion for summary judgment with respect to amended buy-out applications is denied. Mount Adams' cross-motion for summary judgment on that issue is granted.[9] Defendant is directed to accept for consideration as timely filed the amended buy-out applications of Publishers Forest Products and Puget Sound Plywood.

application for contract buy out upon the determination that ... [listing terms]." (Emphasis added.) Plaintiffs may well be correct. The court's ruling, however, is limited to whether Mount Adams' affiliates' amended buy-out applications are time barred, not whether the contracts involved are otherwise eligible under the terms of the Act.